[Crim. No. 4488. First Dist., Div. One. Sept. 14, 1964.]

In re ALBERT ROY HUDDLESON on Habeas Corpus.

[Crim. No. 4602. First Dist., Div. One. Sept. 14, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. EVERETT HILL et al., Defendants and Respondents.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, Thomas C. Lynch, District Attorney, and Janet Aitken, Assistant District Attorney, for Appellant in Crim. No. 4488 and Plaintiff and Appellant in Crim. No. 4602.

Edward T. Mancuso, Public Defender, and Claude D. Perasso, Deputy Public Defender, for Respondent in Crim. No. 4488.

Marshall W. Krause and Hartly Fleischmann for Defendants and Respondents in Crim. No. 4602.

SULLIVAN, J.—These separate cases present a single common issue: the constitutionality of subdivision (2) of section 647a of the Penal Code. This subdivision provides: ''Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment.''[1]

In No. 4488 defendant Huddleson entered a plea of guilty to a complaint filed in the Municipal Court for the City and County of San Francisco charging him with a violation of the foregoing subdivision. The court granted six months' probation apparently imposing as a condition of probation 10 days' imprisonment in the county jail. (Pen. Code, §§ 1203, 1203.1.) Subsequently probation was revoked and defendant was sentenced to imprisonment in the county jail for six months.[2] Thereafter, on September 20, 1963, defendant filed in the court below a petition for writ of habeas corpus. He alleged that his imprisonment under section 647a, subdivision (2), was unlawful because said subdivision was unconstitutional by reason of being vague and indefinite, of violating the requirement that all laws of a general nature shall have a uniform operation (see Cal. Const., art. I, § 11) and of being unreasonable and arbitrary and in violation of personal rights and liberties. The court ordered issuance of the writ forthwith and after a hearing on the return made its order discharging defendant. This appeal by the People followed. (Pen. Code, § 1506.)

In No. 4602 defendants Hill and Sandness were each charged in separate complaints filed in the Municipal Court of the City and County of San Francisco with a violation of Penal Code section 647a, subdivision (2), committed on June 3, 1963 ''in that said defendant did then and there loiter

[1]Subdivision (1) of section 647a provides: ''Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable upon first conviction by a fine not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months or by both such fine and imprisonment and is punishable upon the second and each subsequent conviction or upon the first conviction after a previous conviction under section 288 of this code by imprisonment in the state prison for not less than one year.''

[2]None of the record in *People* v. *Huddleson* is before us. The foregoing facts are gleaned from the statements of counsel in the habeas corpus proceedings in the superior court.

about a public place at and near which children attend and normally congregate." Defendants demurred to the respective complaints specifying as grounds of demurrer the same three objections to the statute urged by Huddleson in No. 4488.[3] The municipal court filed a memorandum opinion declaring section 647a, subdivision (2), unconstitutional, sustaining the demurrer to the complaints, and granting the People leave to amend the existing complaints or file amended complaints. Upon the failure of the People to do so, the court ordered the complaints dismissed. The People appealed to the superior court which upheld the statute, reversed the judgment of dismissal and directed the municipal court to overrule the demurrer, one judge of the appellate department of the superior court dissenting. We thereafter ordered the case transferred to this court for hearing and decision upon the certification of the appellate department that such transfer appeared necessary to secure uniformity of decision and to settle an important question of law. (Cal. Rules of Court, rule 62(a).)

In determining whether the attacks on the statute have merit, we are mindful of the settled rule that "[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." (*Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701]; *State* v. *Industrial Acc. Com.* (1957) 48 Cal.2d 365, 371 [310 P.2d 7]; *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141, 146 [346 P.2d 737]; *In re Cregler* (1961) 56 Cal.2d 308, 311 [14 Cal.Rptr. 289, 363 P.2d 305] and cases there cited.)

In the instant case, the challenges made to the constitutionality of the subdivision under attack center about the use of the word "loiter" in the statute. In essence they assert that the word is of such a broad and all-embracing character as to encompass innocent as well as objectionable actions and thus impose an unreasonable proscription upon the conduct

---

[3]Hill and Sandness urged that section 647a, subdivision (2), was null and unconstitutional (1) "in that it is so vague and indefinite as to deprive defendants of due process of law"; (2) "because it violates the requirement that all laws of a general nature have a uniform application": and (3) "because it is an unreasonable and arbitrary invasion of personal rights and liberties."

of the public at large. The word "loiter" has been defined to mean "To be slow in moving; delay; linger; saunter; lag behind" (Webster's New International Dictionary (2d ed.); see *State* v. *Starr* (1941) 57 Ariz. 270 [113 P.2d 356, 357]) or "to linger idly by the way, to idle" (*Phillips* v. *Municipal Court* (1938) 24 Cal.App.2d 453, 455 [75 P.2d 548]). While taken by itself and in its broad meaning the term may carry no criminal implications, nevertheless as employed in a penal statute and considered in such statutory context, it may have a sinister, wrongful or criminal import. (*In re Cregler, supra,* 56 Cal.2d 308, 311-312; *People* v. *Merolla* (1961) 9 N.Y.2d 62 [172 N.E.2d 541, 544-545]; *People* v. *Bell* (1953) 306 N.Y. 110 [115 N.E.2d 821, 822]; *State* v. *Starr, supra*; see *Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584, 587 [38 Cal.Rptr. 226]. Cf. *People* v. *Bruno* (1962) 211 Cal.App.2d Supp. 855, 860-861 [27 Cal.Rptr. 458] in respect to the criminal implications of the term "wandering.")

Thus in *Cregler, supra,* the Supreme Court upheld the constitutionality of former Penal Code section 647, subdivision 4,[4] which made it a misdemeanor for any person known to be a pickpocket, thief, burglar or confidence operator and having no visible or lawful means of support, to loiter around certain specified public places or assemblies.[5] The court held that the word "loiter" as used in the statute there under consideration "has a sinister or wrongful as well as a reasonable definite implication. As proscribed by the statute the word 'loiter' obviously connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered." (56 Cal.2d at p. 312.)

In *Merolla, supra,* the Court of Appeals of New York in a unanimous decision upheld the validity of a statute pro-

---

[4]As section 647 read before its repeal in 1961 and the enactment at that time of a new section 647.

[5]Former Penal Code section 647 provided in relevant part: ". . . 4. Every person known to be a pickpocket, thief, burglar or confidence operator, either by his own confession, or by his having been convicted of any of such offenses, and having no visible or lawful means of support, when found loitering around any steamboat landing, railroad depot, banking institution, broker's office, place of amusement, auction room, store, shop or crowded thoroughfare, car, or omnibus, or any public gathering or assembly; . . .

"Is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

viding that no person should without a satisfactory explanation, loiter upon or within 500 feet of certain specified waterfront facilities. The court, noting that ''loiter'' was a term of common or accepted meaning stated ''that notwithstanding the well-understood meaning—acquired through extended usage—of the term loiter or loitering, when taken 'by itself, and without more,' it is not 'enough to inform a citizen of its criminal implications and, by the same token, leave it open to arbitrary enforcement' [citation]. *The clarity and certainty necessary to satisfy constitutional requirements may be acquired, however, by reference to the context in which the term is used.''* (172 N.E.2d at p. 544; emphasis added.) Referring to its previous opinion in *People* v. *Bell, supra,* 115 N.E.2d 821, upholding the constitutionality of a statute prohibiting loitering around railway or subway facilities, the court further stated: ''In view of these factors, namely, the specification of facilities, their known utility and purpose, and the notoriety of the evils which have pervaded the area, the particular misconduct at which the statute is directed becomes apparent. Loitering in the context here presented is lingering about waterfront facilities for a purpose unconnected with lawful waterfront business or related activity. Constitutional guarantees, therefore, are not offended by the statute. The term loitering, as has been demonstrated, is possessed of sufficient clarity and definition in context.'' (P. 545 [172 N.E.2d].)

We are persuaded that as used in the statute now before us the term ''loiter'' was intended to have a restricted rather than a general meaning and that as so employed it has here, as in the statute under consideration in *Cregler,* ''a sinister or wrongful as well as a reasonable definite implication.'' (*In re Cregler, supra,* 56 Cal.2d 308, 312.) We are of the opinion that the word ''loiter'' was intended to proscribe lingering about schools and public places for the purpose or with the intent of effectuating some criminal act. As the court pointed out in *Cregler,* provisions of the Penal Code ''are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.'' (Pen. Code, § 4; *People* v. *Carskaddon* (1957) 49 Cal.2d 423, 425 [318 P.2d 4] and cases there cited; *In re Cregler, supra,* 56 Cal.2d 308, 312.) It is clear that the purpose of section 647a, considered in its entirety, is the ''protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter.'' (*People* v. *Pal-*

*lares* (1952) 112 Cal.App.2d Supp. 895, 900 [246 P.2d 173][6]; *People* v. *Carskaddon, supra; People* v. *Moore* (1955) 137 Cal.App.2d 197, 199 [290 P.2d 40]; *People* v. *Thompson* (1959) 167 Cal.App.2d 727, 733 [335 P.2d 249].)

We must so construe the statute before us, if its language permits, as to render it valid and constitutional rather than invalid and unconstitutional. (*Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]; *Bodinson Mfg. Co.* v. *California Employment Com.* (1941) 17 Cal.2d 321, 326-327 [109 P.2d 935]; *County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].) "It is the rule that where a statute or ordinance is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, in whole or in part, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable." (*Franklin* v. *Peterson* (1948) 87 Cal. App.2d 727, 730 [197 P.2d 788]; *City of Los Angeles* v. *Belridge Oil Co.* (1957) 48 Cal.2d 320, 324 [309 P.2d 417]; *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-60 [195 P.2d 1]; *People* v. *One 1941 Ford 8 Stake Truck* (1945) 26 Cal.2d 503, 506-507 [159 P.2d 641].) Our duty in this respect requires us to read the statute in the light of the objective sought to be achieved by it as well as of the evil sought to be averted. (*Wotton* v. *Bush* (1953) 41 Cal.2d 460, 467 [261 P.2d 256].) "Where the words have a broad and also a restricted meaning, if the apparent object of the statute will be subserved by construing them in their restricted sense, whereas a principal object would be defeated by construing them in their broad sense, the restricted interpretation will be preferred and the broad meaning rejected, though the latter may be the more usual meaning." (45 Cal.Jur.2d, Statutes, § 140, p. 648.) Thus in *Cregler*, the court in uphold-

---

[6]At the time of the decision in *Pallares*, section 647a, subdivision (2), read as follows: "Every person who loiters about any school or public place at or near which school children attend, or who loiters in or about public toilets in public parks, is a vagrant, . . ." In that case Judge Conley, now Presiding Justice Conley of the Fifth District Court of Appeals, observed: "The purpose of the legislation is indicated clearly by reference in the section to section 288 of the Penal Code, by the increase of penalties for second offenders, and by the prohibition in the second subparagraph of the *section of loitering near schools or public places where school children attend.*" (112 Cal.App.2d Supp. at p. 900; italics added.)

ing the validity of section 647, subdivision 4, applied the rule that a statute will not be given an interpretation in conflict with its clear purpose and general words used therein will be given a restricted meaning when reason and justice require rather than a literal meaning which would lead to an unjust and absurd consequence. (*In re Cregler, supra,* 56 Cal.2d 308, 312, citing *People* v. *Kelley* (1937) 27 Cal.App.2d Supp. 771, 774 [70 P.2d 276].)

Guided by these canons of construction we have therefore concluded that the term loiter in the context of the statute under consideration proscribes only that species of "lingering" and "idling" about schools or public places which is engaged in for an evil or sinister purpose. As pointed out above, section 647a was enacted to protect children. Subdivision (1) thereof makes guilty of a misdemeanor or felony as the case may be every person who annoys or molests any child under the age of 18 (see footnote 1, *ante*). Subdivision (2) provides additional protection for children by removing any opportunity for the child molester to carry out his evil purpose. Both subdivisions label the offender a "vagrant." Nevertheless it is obvious that the purpose of the first subdivision is largely punitive while that of the second subdivision is largely preventive. (See Perkins, *The Vagrancy Concept,* 9 Hastings L.J. 237, 250-261; Sherry, *Vagrants, Rogues and Vagabonds,* 48 Cal.L.Rev. 557, 566-567.) But, as we have said, the loitering condemned by the second subdivision is not loitering in its general sense but in its restricted and sinister sense. It includes lingering, waiting and delaying but only for a sinister or wrongful purpose and therefore excludes such activities for a lawful purpose. "Loitering as forbidden includes waiting, but mere waiting for any lawful purpose does not constitute such loitering." (*In re Cregler, supra,* 56 Cal.2d 308, 312.)

Therefore as we construe the statute before us, persons who merely sit on park benches, loll on public beaches, pause in the vicinity of schools or linger in the many public areas frequented by children cannot be reasonably considered as loitering within the compass of the statute. It is only when the loitering is of such a nature that from the totality of the person's actions and in the light of the prevailing circumstances, it may be reasonably concluded that it is being engaged in "for the purpose of committing a crime as opportunity may be discovered" (*In re Cregler, supra*) that such conduct falls within the statute. We therefore hold

that the term loiter has a clear and reasonably definite significance in the context of the statute, that it is not so vague and indefinite as to offend constitutional guaranties and that the statute so construed does not invade, deny or abridge personal rights and liberties. It also follows that the statute as so construed possesses the required uniformity of operation to satisfy the mandate of article I, section 11, of the Constitution.

We are mindful of the fact that section 647a of the Penal Code as it read prior to its amendment in 1947 casting the statute in two subdivisions was upheld as constitutional in *Phillips* v. *Municipal Court, supra,* 24 Cal.App.2d 453. The statute then cast in a single paragraph but with provisions largely the same as those now before us then read as follows: ''Every person who annoys or molests any school child or who loiters about any school or public place at or near which school children attend, is a vagrant, and is punishable by a fine of not exceeding five hundred dollars or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment.'' The court said: ''It will be observed that the law does not attempt to entirely prohibit loitering, but that it confines its prohibitions to loitering about any school or public place at or near which school children attend. However, the mere fact that some innocent people may desire to loiter near a public school does not deprive the legislature of its power to prohibit loitering at such a place if the safety of school children require such legislative action. [Citations.]

''The courts will construe general statutes reasonably and not in a manner that will lead to unjust or absurd results. [Citations.] Innocent acts may be prohibited by statutes enacted under the police power when necessary to protect the public peace, safety and welfare. If the Constitution guarantees to the petitioner the right to loiter, it certainly does not guarantee to him the right to do his loitering in places where promiscuous loitering may endanger the peace and safety of our school children on account of the immoral desires of some who may exercise such right. [Citations.]'' (Pp. 455-456.)

It is apparent that the court in *Phillips* did not ascribe to the term loiter a completely sinister significance and therefore did not restrict the impact of the statute to loitering engaged in for a wrongful purpose. Since we have applied the rationale of *Cregler* to the instant case and have construed

the crucial term of the statute in context in a manner similar to that employed in *Cregler,* we have not found it necessary to rest our conclusions herein on *Phillips* or to uphold this statute on the somewhat broader basis on which the court in *Phillips* approved its predecessor.[7]

In view of our construction of the statute at hand and our reliance upon *Cregler,* we are not persuaded to follow the precedents cited by the defendants herein and particularly those urged upon us at oral argument: *Commonwealth* v. *Carpenter* (1950) 325 Mass. 519 [91 N.E.2d 666]; *Ex parte Mittelstaedt* (1956) 164 Tex.Crim.Rep. 115 [297 S.W.2d 153]; *City of St. Louis* v. *Gloner* (1908) 210 Mo. 502 [109 S.W. 30]; *Pinkerton* v. *Verberg* (1889) 78 Mich. 573 [44 N.W. 579]; *Bouie* v. *Columbia* (1964) 378 U.S. 347 [84 S.Ct. 1697, 12 L.Ed.2d 894]; *Baggett* v. *Bullitt* (1964) 377 U.S. 360 [84 S.Ct. 1316, 12 L.Ed.2d 377]. We deem it unnecessary to enter upon a detailed discussion of these cases. Suffice it to say that they involve statutes where the requisite constitutional certainty and definiteness could not be found by reference to the statutory context and where the crucial terms were not susceptible of a sinister and therefore restricted meaning. *City of St. Louis* and *Pinkerton,* on which defendants heavily rely, were both discussed at length in support of the holding in *Territory of Hawaii* v. *Anduha* (9th Cir. 1931) 48 F.2d 171, 172, a case which the court in *Cregler* rejected as lacking persuasive force. (56 Cal.2d at p. 313.) *Carpenter* involved an ordinance providing that ''[N]o person shall, in a street, . . . wilfully and unreasonably saunter or loiter for more than seven minutes after being directed by a police officer to move on. . . .'' The provisions had the same broad sweep as those in the *Anduha* case on which *Carpenter* relied for support. *Mittelstaedt* struck down an ordinance making it unlawful for any person to loaf or loiter within a specified distance of any school or public building, the court relying on *Anduha* and *City of St. Louis* v. *Gloner, supra.* *Bouie* and *Baggett,* apart from reiterating the principles dealing with the constitutional requirement of certainty and definiteness in criminal statutes, with which we do not quarrel, are otherwise not in point.

In No. 4488 the order of the superior court discharging defendant and petitioner Huddleson from custody (referred to therein as an order granting defendant a writ of habeas

---

[7]*Cregler* cited *Phillips* for purposes of comparison only (56 Cal.2d at p. 312) and without other comment.

corpus) is reversed and the cause is remanded to the superior court to enter an order discharging the writ and remanding defendant to custody.

In No. 4602 the order of the municipal court dismissing the complaints filed therein against defendants Hill and Sandness is reversed with directions to said court to overrule the demurrer of defendants thereto.

Bray, P. J., and Molinari, J., concurred.

The petitions of all the respondents for a hearing by the Supreme Court were denied November 10, 1964. Mosk, J., did not participate therein.