[Crim. No. 21650. Second Dist., Div. One. Feb. 5, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WARNEL LEE JUNIOUS, Defendant and Appellant.

## COUNSEL

Joseph Sack, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Charles J. Moore, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LILLIE, J.—Defendant was charged in count I with unlawful possession of a restricted dangerous drug—amphetamine (§ 11910, Health & Saf. Code), count II with carrying a concealed weapon (§ 12025, Pen. Code) and count III with loitering about a school (§ 653g, Pen. Code). His motion pursuant to section 1538.5, Penal Code, was denied; subsequently he entered a guilty plea to count I, and the remaining counts were dismissed. Defendant appeals from the judgment contending that his detention was not justified and the gun and drugs discovered as a result of his arrest should have been suppressed.

Officers Berlin and Dina, who were seated in their patrol car a block away, saw defendant in the cab of a Melo-Dee ice cream truck parked at the curb near Dorsey High School during school hours. It was raining

and defendant talked with various juveniles who approached the truck and stood in the rain. It continued to rain and for 20 minutes the officers watched defendant as he talked to various students; it seemed "very odd" to them that the juveniles were standing in the rain without raincoats getting soaked yet none of them made any purchase from the truck; there were three compartments on the truck from which ice cream could be dispensed, two of which Officer Berlin could see, and defendant never opened any of them. During this period seven to ten juveniles walked to the vehicle, talked to defendant and departed but no ice cream or merchandise was purchased or taken from the truck and no money changed hands; once defendant exited from the cab and walked around the truck but did not obtain any merchandise. The officers had information there were several ice cream vendors dealing in narcotics in the school area around Dorsey and other high schools and made it a habit to watch out for some of the ice cream trucks in the area. Because they were of the opinion that defendant was loitering about the school in violation of section 653g, Penal Code, the officers approached him. At Officer Berlin's request defendant gave his name. Officer Dina asked him to produce identification but defendant had none evidencing his employment relationship with Melo-Dee and submitted a driver's license which failed to list the address defendant gave him. About one minute after the initial contact with defendant Officer Dina returned to the patrol car with the driver's license to run an official check; the officers felt that a warrant check was proper because defendant had no identification to show he was employed by Melo-Dee and they knew it was common practice for salesmen to produce evidence of their employment, and defendant's driver's license revealed several address changes but not his current address; a minute later the officer learned from the check there were three warrants outstanding for defendant's arrest whereupon they arrested him. Only three minutes elapsed from the time of initiating the investigation to the time of receiving a reply from the warrant check. At the station a cursory search for weapons revealed a .25 caliber automatic pistol in the waistband of defendant's pants; defendant asked Officer Dina to remove his right boot which he did and out fell five aluminum foil packages containing amphetamine tablets.

Defendant testified on the motion that he had been working for Melo-Dee three days but had no identification showing his employment relationship and to his knowledge neither did any of the other drivers; his supervisor instructed him to go to Dorsey High School; he had been there 45 minutes and had made several sales of candy from a compartment in the cab just prior to the appearance of the officers; he had the gun in his possession for protection against robberies; it was drizzling and not raining.

■ Advancing a factual argument in support thereof, it is appellant's contention that his initial detention was unlawful because the officers had no reason to believe there was any unusual or suspicious activity, and there is no evidence that he was in any way connected with any activities which might be related to crime.

■ Appellate review of a ruling made under section 1538.5, Penal Code, is limited to whether there is substantial evidence in the record to justify such ruling. (*People* v. *Superior Court* [*Casebeer*] 71 Cal.2d 265, 274 [78 Cal.Rptr. 210, 455 P.2d 146].) ■ "The validity of any particular temporary detention involves a determination of fact by the trial court, and, on appeal, the question is whether the determination by the trial court is supported by substantial evidence. [Citations.]" (*People* v. *Anthony*, 7 Cal.App.3d 751, 760 [86 Cal.Rptr. 767].)

■ Circumstances short of probable cause to make an arrest may justify an officer's approach of a person for the purpose of investigating possible criminal behavior (*Terry* v. *Ohio*, 392 U.S. 1, 22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868]; *People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]), and may warrant temporary detention therefor. (*People* v. *Superior Court* [*Simon*] 7 Cal.3d 186, 200 [101 Cal. Rptr. 837, 496 P.2d 1205]; *People* v. *Griffith*, 19 Cal.App.3d 948, 950 [97 Cal.Rptr. 367].) However, "before such a detention may be undertaken there must be an objectively reasonable suspicion that something out of the ordinary has taken place, that the activity is related to a crime, and that defendant is connected to the activity. (*Irwin* v. *Superior Court*, 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Henze*, 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].)" (*People* v. *Griffith*, 19 Cal. App.3d 948, 950 [97 Cal.Rptr. 367].) The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry* v. *Ohio*, 392 U.S. 1, 21 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868].) ■ We conclude that the officers did so in this case.

The officers testified that after observing defendant converse with seven to ten juveniles under rather unusual circumstances for about 20 minutes, they formed the opinion that he was loitering about the school in violation of section 653g, Penal Code; and the activities witnessed by them reasonably justified their conclusion. Under section 653g "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, . . . As used in this section, 'loiter' means to delay, to linger, or to idle about any such school or public place without a lawful purpose for being present." Applying the holding in *In re*

*Huddleson,* 229 Cal.App.2d 618, 625 [40 Cal.Rptr. 581], quoting from *In re Cregler,* 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305], which upheld the constitutionality of the predecessor statute, section 647a, subdivision (2), Penal Code, "by construing it to apply 'only when the loitering is of such a nature that from the totality of the person's actions and in the light of the prevailing circumstances, it may be reasonably concluded that it is being engaged in "for the purpose of committing a crime as opportunity may be discovered" ' " (*People* v. *Frazier,* 11 Cal. App.3d 174, 182-183 [90 Cal.Rptr. 58]) to section 653g, Penal Code, the court in *Frazier* held that "The requirement of *Huddleson* that defendant be present 'for the purpose of committing a crime as opportunity *may be* discovered' implies that the opportunity need not actually occur but only be awaited. Nor need there be evidence that the defendant ever took any steps toward the commission of any specific crime, or committed any prior crime." (P. 183.)

The issue here is not whether there is substantial evidence to support a conviction under section 653g as in *Frazier* or even probable cause to make an arrest because the officers did not approach defendant for the purpose of arresting him for loitering and he was neither arrested nor charged with such offense, but whether the circumstances were such as to justify the officers' approach of defendant and his temporary detention for the purpose of investigating a violation of section 653g. There is no question but that each officer formed the opinion that he was loitering about the school and "approached the defendant for investigation on that premise." Officer Berlin testified that he felt defendant was loitering under section 653g and that he did not have any lawful business there; asked why, he answered, "It seemed very odd that these people [seven to ten juveniles] were standing out in the rain and none of them seemed to have any raincoats on. They were getting soaking wet, but no one was buying any ice cream." The testimony of the officers makes it fairly clear that not having seen defendant make an ice cream sale for the last 20 minutes to any of the juveniles, they held the suspicion that he was present at the school for the purpose of awaiting the opportunity to engage in criminal activity. Asked by the court if he suspected that something was going on other than mere loitering, Officer Berlin answered in the affirmative; told that he had not so testified and asked what it was, he responded, "I wasn't asked the question, but we did have information that there were several ice cream vendors dealing in narcotics in the school area, around Dorsey, also Mt. Vernon and Pasteur Junior High School, . . ." Although both officers said that at that time they did not suspect he was selling narcotics to juveniles, Officer Berlin acknowledged they had the foregoing information and

Officer Dina testified that at the time he was "aware of that problem at that school." In the light of the officers' observations, their opinion based thereon that defendant was parked near the school with no apparent business justification and their prior information that ice cream vendors had been dealing in narcotics in the school area, they were justified in concluding that defendant was parked at that location "without a lawful purpose for being present" (§ 653g, Pen. Code) "for the purpose of committing a crime as opportunity *may be* discovered." (*People* v. *Frazier,* 11 Cal.App.3d 174, 183 [90 Cal.Rptr. 58].) While the officers did not see any exchange that might imply a narcotic transaction or defendant do anything illegal "other than possibly being in violation of section 653g of the Penal Code," the circumstances were such as to easily afford defendant, who was waiting at the school location, the opportunity to engage in narcotic activities. Defendant's conduct under the circumstances was sufficiently unusual and his connection with a possible violation of section 653g was sufficiently apparent to warrant police investigation therefor. The officers' approach to defendant and their request to give his name, and whatever detention may have resulted therefrom were lawful, and the interference with defendant's right to privacy at that time was minimal. (*People* v. *Wickers,* 24 Cal.App.3d 12, 14-16 [100 Cal.Rptr. 732]; see *People* v. *Woods,* 6 Cal.App.3d 832, 835-836 [86 Cal.Rptr. 264].)

█    Appellant argues that after he sufficiently established his identity by giving his name and driver's license and the purpose for being there, his continued detention during the warrant check was not justified and was the result of only an unprovoked curiosity on the part of the police to see if he had a record, citing *Willett* v. *Superior Court,* 2 Cal.App.3d 555, 559 [83 Cal.Rptr. 22]; thus he concludes that the gun and drugs discovered as a result of his arrest should have been suppressed. The only identification defendant produced was a driver's license which had several addresses crossed out and did not bear the address defendant gave the deputies; he had no identification evidencing his business relationship with Melo-Dee which the deputies understood was commonly possessed by its salesmen. Deputy Berlin was asked why he felt it was necessary to run a warrant check and he responded, "He had no way of showing, first of all, that he was employed by Melo-Dee Ice Cream Company" and for that reason he thought maybe defendant was not employed by it; and defendant "had a few address changes on his license" and "the address change that was on the license was not where he was residing at the time." Because of the paucity of identification under the circumstances here, the officers' decision to detain defendant for the few minutes it took him to run a radio check was reasonable and proper. (*People* v. *Courtney,* 11 Cal.

App.3d 1185, 1190 [90 Cal.Rptr. 370]; *People* v. *Bloom,* 270 Cal.App.2d 731, 735 [76 Cal.Rptr. 137].) The suspicious activity confronting the officers justified the minimal interference with defendant's right to privacy caused by the brief detention while awaiting report of the warrant check which was not accompanied by any physical restraint, search or use of physical force (*People* v. *Gravatt,* 22 Cal.App.3d 133, 137 [99 Cal.Rptr. 287]); at most, only three minutes elapsed from the time of initial contact with defendant to the time the results were received.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.