[Crim. No. 5323. Fourth Dist., Div. One. Mar. 9, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ANTHONY HIRST et al., Defendants and Appellants.

## Counsel

Charles T. Bumer, Jr., for Defendants and Appellants.

John C. Witt, City Attorney, Stuart H. Swett and Derek J. Simmons, Deputy City Attorneys, for Plaintiff and Respondent.

## Opinion

**WHELAN, Acting P. J.**—Defendants James Anthony Hirst, Haven Colby Anshen and Veronique Else Madeleine Lettau have appealed from their convictions in a nonjury trial in the Municipal Court of the San Diego Judicial District for violations of Penal Code section 653g. That section as amended in 1970 reads: "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment.

"As used in this section, 'loiter' means to delay, to linger, or to idle about any such school or public place without a lawful purpose for being present."

Hirst was charged on the basis of an incident that occurred on March 11, 1971; Anshen and Lettau, in connection with an incident on May 20, 1971. The cases were consolidated for trial. After conviction the defendants united in an appeal to the Superior Court of San Diego County, which reversed the judgments and certified the case to this court for hearing and decision. (Cal. Rules of Court, rule 63.) Thereupon, we ordered such a transfer. (Cal. Rules of Court, rule 62.)

Without setting out the evidence in detail, it shows each of the defendants went onto the grounds of Morse High School in the City of San Diego

to make contact with students of the school on the school grounds for the purpose of distributing literature, and, in the case of Anshen and Lettau, also to circulate petitions for signatures. The visits were during one of two lunch periods when about half of the students were having lunch, mostly in the open, and the other half were in classes. Hirst went among the students in the lunch area with his leaflets. The two women sought out smaller groups of students at a distance removed from the main body, making themselves centers of attraction by sitting on the grass.

Hirst was asked to leave the campus by Lawrence Schimpf, a school administrator, recognized by Hirst to be such. Hirst refused to do so, even after handing out all his leaflets, saying he would wait to talk to a girl who he said had gone to the restroom; when asked for her name he gave a name; Schimpf sent a student to the restroom to inquire for someone of that name; the student reported there was no one of that name in the restroom.

Anshen and Lettau were arrested by police who had the campus under observation without being requested to make the arrests by the school authorities.

In each case the complaint alleged a violation of Penal Code section 653g was committed by the defendant on the given date "who was a person who loitered about a school, or public place, at or near which children attend or normally congregate."

The chief contentions on appeal are that the section under which defendants were prosecuted is unconstitutional; that if otherwise constitutional it is unconstitutional as applied to the conduct of defendants, which was protected under the First Amendment to the federal Constitution; and that the complaint is deficient to meet due process requirements that the defendants be informed of the charges against them.

We have undertaken to decide whether the 1970 amendment of the section has resulted in a definition of the word "loiter" that eliminates from its use any sinister connotation of an intent to commit another crime, and yet permits the imposition of a penal sanction to such loitering upon school grounds.

The statute prior to 1970 read as follows: "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment." (Pen. Code, § 653g.)

Defendants argue that the 1970 amendment rendered the statute unconstitutional, claiming it eliminated the connotation of a sinister intent, and made punishable otherwise innocent acts such as in the case of these defendants, the distribution of printed material coming within the protection of the First Amendment to the federal Constitution.[1]

If the amendment produced such results, then the effect of such cases as *In re Cregler,* 56 Cal.2d 308 [14 Cal.Rptr. 289, 363 P.2d 305], *People* v. *Frazier,* 11 Cal.App.3d 174 [90 Cal.Rptr. 58], *People* v. *Bevins,* 6 Cal.App.3d 421 [85 Cal.Rptr. 876], *Mandel* v. *Municipal Court,* 276 Cal.App.2d 649 [81 Cal.Rptr. 173], and *In re Huddleson,* 229 Cal.App.2d 618 [40 Cal.Rptr. 581], is avoided, in all of which the constitutionality of statutes proscribing loitering has been upheld upon the ground that the word "loiter" or "loitering" as used in such statutes implies loitering for the purpose of committing a crime as opportunity may arise. Such meaning is memorialized in the phrase "loitering with intent," so common in the idiom of English law enforcement.

We proceed to state why the 1970 amendment does not have the effect contended for by both parties.

We do not doubt the Legislature, in adopting the amendment, had the laudable and attainable aim of making it possible to penalize persons coming upon or remaining upon school grounds for their own purposes unrelated to school activities without permission of the school authorities or against their expressed request to leave.

"Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." (*People* v. *Hallner,* 43 Cal.2d 715, 719 [277 P.2d 393].) (See also *People* v. *Curtis,* 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33].)

---

[1]The legislative history of Penal Code section 653g discloses the possibility the Legislature in adopting the section intended to use the word "loiter" in that specific statute in a sense not implying any sinister purpose. Penal Code section 653g had its genesis as Senate Bill No. 1385, which read as follows: "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment.

"*As used in this section, 'loiter' means to delay, to linger, or to idle about any such school or public place for the purpose or with the intent of effecting a criminal offense.*"

There were several amendments in the assembly, in one of which the word "vagrant" was temporarily eliminated. It was given its present form in a joint legislative conference.

What was needed, therefore, if the sinister implication of the word "loiter" were to be removed, was a definition by the statute of the words "lawful purpose" which would permit the exclusion from that category of activities not otherwise forbidden by law.

The definition actually embodied in the amendment leaves us to go out by the same door wherein we went. To be present without a lawful purpose means to be present either with an unlawful purpose or without any purpose whatever.

That second alternative might be a saving feature if it were intended by the amendment to throw upon a defendant the burden of proving he had a lawful purpose in being present.

We do not see that the amendment should be so construed.

What remains is that if a defendant has a purpose in being present which is not lawful, it must be unlawful. The one word is the antonym of the other.

Penal Code section 626.8, enacted in 1969, penalizes a person who comes upon school grounds "without lawful business thereon" and whose presence or acts interferes with or disrupts school activities. It also defines "lawful business" as "a reason for being present upon school property which is not otherwise prohibited by statute, by ordinance, or by any regulation adopted pursuant to statute or ordinance."

If the amendment to section 653g, instead of using the words "lawful purpose," had used the words "lawful business," that definition of section 626.8 might be applied to the same words used in the later amendment to section 653g. (*In re Kohler,* 79 Cal. 313, 316 [21 P. 758]; *Meade* v. *Watson,* 67 Cal. 591, 594 [8 P. 311].)

At the trial of the case at bench, there were introduced into evidence certain rules of the San Diego Unified School District adopted by the governing board under the authority of Education Code section 925, and which were in effect after December 17, 1969.

Among those rules were the following: " '*Unlawful Business' or Activities*—Pursuant to Penal Code Section 626.8 and Education Code Section 925, the activities listed below are prohibited on school property of the San Diego Unified School District and deemed to be not 'lawful business.'

"Any person who comes into any school building or upon any school ground, or street, sidewalk, or public way adjacent thereto for the purpose of conducting the unlawful business listed below, *and* whose presence or

acts interfere with the peaceful conduct of the activities of such school or disrupt the school or its pupils or school activities, shall be asked to leave by the Principal of the school or a representative of the Principal. Refusal or failure to leave the area upon being asked to leave as set forth above shall be punished as set forth in Penal Code Section 626.8. [Italics added.]

"For purposes of this regulation, unlawful business is defined as follows:

"a. Selling or giving to pupils magazines, newspapers, or circulars which are not approved for distribution by the chief administrative official of the school or his designated representative prior to distribution."

The quoted rule so far as it relates to any section of the Penal Code, relates to section 626.8 enacted in 1969, and which the school rule was intended to implement. Section 626.8, it may be noted, provides for more severe penalties for subsequent violations, a feature absent from section 653g. The school rule contemplates prosecution and punishment under section 626.8; its definition of what is not lawful business cannot be consulted to throw light on the meaning of "lawful purpose" in a statute subsequently enacted without reference to the local school rule.

It is true that the phrase "lawful business" in a vagrancy statute has reference not to a calling, trade or other means of earning a living, but to a reason for being abroad at a late and unusual hour. (*Ex parte McLaughlin,* 16 Cal.App. 270, 271 [116 P. 684].)

But if it were to be held that "lawful purpose" in section 653g equates with "lawful business" in section 626.8 and adopts the earlier section's definition of lawful business, two problems still would remain: (a) whether a definition of "lawful business" contained in a local school rule affecting the use of the school premises would give notice to the public generally of its definitions so as to base a penal sanction thereon; (b) whether, in the case of a statute phrased generally in the language of section 653g, its application to the conduct of nonstudent members of the general public off the school premises could be aided by a local school rule.[2]

---

[2]The instant case discloses the problem, which is one of drafting appropriate legislation. The language of Penal Code section 626.8 and the school rules introduced into evidence in this case suggest the possibility that school administrators desire to have available a penal statute whose sanctions they can invoke as they deem it appropriate, making its operation depend upon the application of their local rules which impart no notice to the public at large and set no standards as to the circumstances under which the distribution of printed material will be approved.

It seems local school rules could play a part in the applicability of a general statute to a local situation. If a statute similar to that of New York, mentioned

Since section 653g in its present form applies to places other than school grounds, its constitutional application to persons not upon school grounds depends upon the use of the word "loiter" as having a sinister implication. Although the same word may have different meanings when used in different places in the same statute (*Sunset Tel. & Tel. Co.* v. *Pasadena,* 161 Cal. 265, 275 [118 P. 796]; *Lambert* v. *Conrad,* 185 Cal.App.2d 85, 95 [8 Cal.Rptr. 56]), here it is used only once.

■ The statute as amended is constitutional and its constitutionality is based upon the same meaning of the word "loiter" given to its use in the preceding statute by those decisions that held such former statute to be constitutional.

■ We hold, also, that an accusatory pleading intended to charge a violation of section 653g is sufficient as against a general demurrer if it is in the language of the statute.

Insofar as *Mandel* v. *Municipal Court, supra,* 276 Cal.App.2d 649, may be considered as holding a complaint charging a violation of section 653g in the language of the statute fails to state a public offense, we do not follow it.

The vice of the pleading in *Mandel* v. *Municipal Court, supra,* 276 Cal.App.2d 649, was that it showed upon its face that the purpose for which Mandel was upon the school grounds was the distribution of printed matter which the Court of Appeal held to be an exercise of First Amendment rights and not an unlawful purpose, since the statute did not declare that being upon the school grounds without permission was a violation.

The rule of *People* v. *Clenney,* 165 Cal.App.2d 241 [331 P.2d 696], does not apply. In *Clenney,* it was possible to know and to allege what specific act forbidden by the Vehicle Code had been committed additionally by the driver while driving under the influence of alcohol. It is not so easily possible to allege the intent to commit a specific crime that has not been committed or even attempted beyond the point of loitering with intent to commit it.

■ Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. (*In re Hess,* 45 Cal.2d 171, 175 [288 P.2d 5].)

---

herein, forbids the presence upon school grounds of persons without express permission of the school authorities, a local rule might define those persons or classes of persons to whom by such rule express permission was given, and possibly declare prohibited uses of the school grounds that could be posted thereon.

*In re Huddleson, supra,* 229 Cal.App.2d 618, 620-621, held a complaint sufficient that alleged a violation of Penal Code section 647a, subdivision (2),[3] " 'in that said defendant did then and there loiter about a public place at and near which children attend and normally congregate.' "

A fair conclusion from those cases that have upheld the constitutionality of statutes against loitering upon the ground the word as used in the statutes has the sinister connotation of loitering with intent to commit a crime as the opportunity might present itself is that neither allegation nor proof requires an intent to commit a specific crime, but only a specific intent to commit some crime, the fact of the existence of such an intent to be inferred from all the circumstances.

The question whether enforcement of the statute against defendants would work an unconstitutional infringement of First Amendment rights is incidental to the case at bench.

If the statute were so phrased that it properly prohibited the presence of defendants upon the school property, it might nevertheless be enforced although they were present for the purposes within the protection of the First Amendment.

*People* v. *Sprowal,* 18 N.Y.2d 683 [273 N.Y.S.2d 430, 219 N.E.2d 878], appeal dismissed, 385 U.S. 649 [17 L.Ed.2d 670, 87 S.Ct. 768] (earlier opinion, 17 N.Y.2d 884 [271 N.Y.S.2d 310, 218 N.E.2d 343]), dealt with a statute which provides that any person, not parent or legal guardian of a pupil, who loiters in or about any school building or grounds without written permission or in violation of posted rules, is guilty of disorderly conduct. The court held rights under the First and Fourteenth Amendments to the federal Constitution were not violated in the case of a defendant convicted under the statute who distributed leaflets in front of a high school.

Whatever may be the right of students of a primary or secondary school to express opinions upon school grounds in a nonaggressive, nondisruptive manner (see *Tinker* v. *Des Moines School Dist.,* 393 U.S. 503 [21 L.Ed.2d 731, 89 S.Ct. 733]), the right of school authorities even at the college level to make reasonable and nondiscriminatory regulations that may to some extent restrict the freedom of association of students was declared in *Waugh* v. *Board of Trustees,* 237 U.S. 589 [59 L.Ed. 1131, 35 S.Ct. 720], and received continuing recognition in *Healy* v. *James,* 408 U.S. 169 [33 L.Ed.2d 266, 92 S.Ct. 2338].

---

[3]Now covered in section 653g.

■ Consequently, those who are not students and are not otherwise engaged in the normal operations of a school must be subject to such regulations governing a school and its property as the Legislature or the school administration may impose.

Mr. Justice Black, speaking for the court in *Adderley* v. *Florida,* 385 U.S. 39, 47-48 [17 L.Ed.2d 149, 156, 87 S.Ct. 242, 247], said: "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. . . . The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose."

Such statutory regulations may extend to nonstudent activity on property public or private adjacent to school grounds if the activity is carried on in such manner as to disturb or tend to disturb the peace or good order of the school session. (*Grayned* v. *City of Rockford,* 408 U.S. 104 [33 L.Ed.2d 222, 92 S.Ct. 2294].) That is so even though the activity otherwise comes within the protection of the First Amendment (*Grayned* v. *City of Rockford, supra*).

In *Grayned* the court made these observations, 408 U.S. at pages 118-120 [33 L.Ed.2d at pages 233-234, 92 S.Ct. at pages 2304-2305]: "[W]e think it clear that the public sidewalk adjacent to school grounds may not be declared off-limits for expressive activity by members of the public. But in each case, expressive activity may be prohibited if it 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.' *Tinker* v. *Des Moines School District,* 393 U.S. at 513.

". . . Without interfering with normal school activities, daytime picketing and handbilling on public grounds near a school can effectively publicize those grievances to pedestrians, school visitors, and deliverymen, as well as to teachers, administrators, and students. Some picketing to that end will be quiet and peaceful, and will in no way disturb the normal functioning of the school. For example, it would be highly unusual if the classic expressive gesture of the solitary picketer disrupts anything related to the school, at least on a public sidewalk open to pedestrians."

The effect of the quoted language from *Grayned* is to support the right of school authorities to forbid handbilling on school grounds by persons who are not students, teachers or administrators, or, if it be permitted, to control it as to time and place, or as to the character of the message, so long as discrimination does not result from the presentation of only one side of a possibly controversial subject.

The granting by the United States Supreme Court of a writ of certiorari

in the Washington State case of *State* v. *Oyen,* 78 Wn.2d 909 [480 P.2d 766] [judgment vacated, 408 U.S. 933 (33 L.Ed.2d 212, 92 S.Ct. 2846)], and its order remanding that case to the Washington court for reconsideration in the light of *Police Department of Chicago* v. *Mosley,* 408 U.S. 92 [33 L.Ed.2d 212, 92 S.Ct. 2286], and *Grayned* v. *City of Rockford, supra,* 408 U.S. 104, does not compel a holding Penal Code section 653g is unconstitutional.

The statute in the Washington case declared to be punishable as a vagrant every: "[p]erson, except a person enrolled as a student in or parents or guardians of such students or person employed by such school or institution, who without a lawful purpose therefor wilfully loiters about the building or buildings of any public or private school or institution of higher learning or the public premises adjacent thereto . . . ." (*State* v. *Oyen, supra,* 480 P.2d 766, 767.)

The exclusion from the prohibition of the statute of certain classes of people, such as parents or guardians of students, seems to bring the statute squarely within the rule of the *Mosley* case as denying equal protection to those not within the excluded classes.

Additionally, the defendant in *State* v. *Oyen, supra,* 78 Wn.2d 909, 911 [480 P.2d 766,. 768], was on the school grounds for the distribution of literature, held by the state to constitute an unlawful purpose because of a school regulation "providing that any nonschool-related handouts or leaflets distributed to students on the school premises be first approved by the superintendent."

That regulation, as set forth in the stipulation of facts (*State* v. *Oyen, supra,* 78 Wn.2d 909, 911-912 [480 P.2d 766, 767-768]), seems to call for an approval as to the content of the handouts or leaflets, rather than as to time, place or manner of distribution thereof. In that respect the regulation might be said to make it possible to discriminate in its application as to the types of ideas that might find a forum on the school grounds. Such discrimination in practice would, like the anti-picketing ordinance in the *Grayned* case, deny equal protection.

■ Whether a statute or regulation valid on its face has been applied in a discriminatory manner is a factual question. "[A] statute valid on its face may be unconstitutionally applied [citation], and that discriminatory enforcement even of a criminal statute may be restrained [citation]." (*People* v. *Gordon,* 105 Cal.App.2d 711, 721 [234 P.2d 287].)

■ The evidence in this case shows that all defendants were upon the school ground for the purpose of distributing literature, and in the

case of Hirst, also to talk to a student, neither of which is itself for an unlawful purpose; since the statute under which they were prosecuted does not penalize their presence unless it was for an unlawful purpose, the judgments are reversed.

Ault, J., and Coughlin, J.,* concurred.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.