[Civ. No. 41935. First Dist., Div. One. May 15, 1978.]

In re CHRISTOPHER S., a Person Coming
Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER S., Defendant and Appellant.

**COUNSEL**

Frank W. Dice, Public Defender, and Cary B. Weiss, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**\*—Appellant, a 16-year-old juvenile at the time of the commission of the alleged offense, has appealed (Welf. & Inst. Code, § 800) from an order assuming jurisdiction and declaring him to be a person described in section 602 of the Welfare and Institutions Code. It was charged and found that he violated the provisions of section 653g of the Penal Code in that he did wilfully and unlawfully loiter about a school or place—Pacific Grove High School—which is a place which children attend or normally congregate. He was placed on six months probation and required to do twelve hours in a community work program. He contends that there was insufficient evidence to sustain the petition under the provisions of section 653g of the Penal Code, because there was no substantial evidence that he intended to violate any law or engage in any illegal conduct, and, particularly, that there was no evidence to show that he committed any criminal trespass.

On examination of the record we conclude that the evidence was insufficient to sustain his conviction under the provisions of section 653g, that if he did commit a technical criminal trespass it was not within the scope of the provisions of section 653g as interpreted by the courts, and that in any event it is not every act of trespass or disobedience which will furnish the scienter necessary for a criminal trespass or the scienter under section 653g. The order and finding of the juvenile court must be reversed.

I

Appellant had been transferred from Pacific Grove High School to Community Center High School in October 1976. The former school maintained a library in a separate building which was open from about 8 a.m. to 4:30 p.m. for students who were sent there from classes, or who came with their class and teacher, or students who had unassigned

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

periods. Persons who were not students or employees of the school district were not allowed to use the library, except as special permission might be granted. Students at Community High School were permitted to use the facility if arrangements for such use were made between the principals of the two schools. No such permission had been sought by or granted to appellant. Under regular school procedure, visitors were expected to check in at the main office of the school.

No permission had been granted appellant to come on the campus of Pacific Grove High School after his transfer. Appellant admitted, and the testimony of the principal of the high school indicated, that appellant had been informed several times orally and once by letter not to come on the campus of Pacific Grove High School unless he checked in at the office. He had been so told in January by the principal. On February 7 he was sent a letter by the dean of students, so advising him, and on February 19 the principal again spoke to him because his presence on the school ground the previous school day had been without permission.

On March 23, 1977, the teacher assigned to the library at Pacific Grove High School observed appellant, who he knew was not a student at that school at the time, talking with some of his friends at a table in the library. He went to the phone to call the office. Meanwhile, a library assistant observed appellant, whom she had known two or three years, sitting in the reading area with about three other students. At the time she did not know whether or not he was a student of that school. She testified that nothing especially attracted her attention to appellant, but she recalled going over to the table and saying hello to him. She could not remember whether she went over because some of the others were noisy, but she testified that appellant at no time caused any disturbance in the library although he was not reading or anything like that. Appellant acknowledged that the library was for studying that most people study there, and that he was talking with his friends, but he added that almost everyone there was talking. Although the assistant did not actually see him leave, she stated that he remained in the library about 15 minutes.

Appellant acknowledged that he was not attending Pacific Grove High School; that he had been told to stay off the campus unless he checked in as a visitor; and that he was not using the library in connection with his school work. He explained that he went to the school that day because he had not been there for a while, and he wanted to see his girl friend after school when she got out of class. While he was waiting he went into the library and talked to a couple of friends who were students at the school.

He was at the school about an hour around 2 p.m., but on that day no one ever requested him to leave or told him he should not be on the campus. When he left the library he went to the bathroom and left the campus by the front of the school. There he was cited by a police officer for the offense which led to these proceedings. He testified he was not on the school grounds for any illegal purpose, but admitted that he really had no lawful purpose for being in the library.

## II

Penal Code section 653g reads as follows: "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment. [¶] As used in this section, 'loiter' means to delay, to linger, or to idle about any such school or public place without a lawful purpose for being present."

The first paragraph incorporates provisions formerly found in subdivision (2) of section 647a of the Penal Code. ■ Since *In re Huddleson* (1964) 229 Cal.App.2d 618 [40 Cal.Rptr. 581], the language has been interpreted in the sense that "the word 'loiter' was intended to proscribe lingering about schools and public places for the purpose or with the intent of effectuating some criminal act." (229 Cal.App.2d at p. 623. Accord: *Mandel* v. *Municipal Court* (1969) 276 Cal.App.2d 649, 657-663 [81 Cal.Rptr. 173]; *People* v. *Frazier* (1970) 11 Cal.App.3d 174, 182-183 [90 Cal.Rptr. 58]; *People* v. *Junious* (1973) 30 Cal.App.3d 432, 436-438 [106 Cal.Rptr. 344]; and *People* v. *Hirst* (1973) 31 Cal.App.3d 75, 78-79 [106 Cal.Rptr. 815].)

The second paragraph was added in 1970. In *People* v. *Hirst, supra,* the court stated: "We have undertaken to decide whether the 1970 amendment of the section has resulted in a definition of the word 'loiter' that eliminates from its use any sinister connotation of an intent to commit another crime, and yet permits the imposition of a penal sanction to such loitering upon school grounds." (31 Cal.App.3d at p. 78.) After reviewing the former construction, and the legislative purpose,[1] the court concluded

---

[1] The court acknowledged, "We do not doubt the Legislature, in adopting the amendment, had the laudable and attainable aim of making it possible to penalize persons coming upon or remaining upon school grounds for their own purposes unrelated to school activities without permission of the school authorities or against their expressed

that the reference to "without a lawful purpose" did not change the construction of the statute. It concluded generally, "The statute as amended is constitutional and its constitutionality is based upon the same meaning of the word 'loiter' given to its use in the preceding statute by those decisions that held such former statute to be constitutional." (*Id.*, p. 82.) More specifically, it reversed the convictions, stating: "The evidence in this case shows that all defendants were upon the school ground for the purpose of distributing literature, and in the case of Hirst, also to talk to a student, neither of which is itself for an unlawful purpose; since the statute under which they were prosecuted does not penalize their presence unless it was for an unlawful purpose, the judgments are reversed." (*Id.*, pp. 85-86.)

In *People* v. *Frazier, supra,* the court approved an instruction that loitering "is defined to mean lingering, waiting and delaying . . . of such a nature that from the totality of the defendant's action and in the light of the prevailing circumstances, it may be reasonably concluded that it is being engaged in for the purpose of committing a crime as opportunity may be discovered" as correctly setting forth the principles enunciated in *Huddleson* (11 Cal.App.3d at pp. 182-183). In examining the evidence against three defendants convicted of violation of section 653g because they were "loitering" at hot dog stands adjacent to a school, the court distinguished between two defendants, with respect to whom the circumstances supported a finding that they were engaging or about to engage in criminal conduct, and a third, with respect to whom there was no such evidence. Apparently the latter's sole offense at the time of his arrest was a failure to leave when instructed to do so. In reversing his conviction the court stated, "As to defendant Frazier, on the other hand, there is no evidence that on November 20, 1968, he was in close proximity to any unlawful activity or assembly, or that he engaged in any illegal conduct other than the alleged section 653g violation. Nor is there any substantial evidence that at the time of his arrest defendant Frazier intended to violate any laws as the opportunity might be discovered." (*Id.*, p. 184.)

The trial court was of the opinion that appellant's trespass on the school property, prior to his arrest outside the school, satisfied the element missing with the exonerated Frazier. Assuming that the arresting

request to leave." (31 Cal.App.3d at p. 79.) It concluded the Legislature failed in that purpose stating, "The definition actually embodied in the amendment leaves us to go out by the same door wherein we went. To be present without a lawful purpose means to be present either with an unlawful purpose or without any purpose whatever. . . . [¶] What remains is that if a defendant has a purpose in being present which is not lawful, it must be unlawful. The one word is the antonym of the other." (*Id.*, p. 80.)

officer witnessed a trespass, he did not arrest or cite appellant for that offense. The uncontradicted evidence shows that the appellant had left the school premises of his own volition. There is not a scintilla of evidence to show that at the time of his arrest he was loitering for the purpose of reentering the school without permission if the opportunity offered.

The People rely upon the principle that loitering, in the sense required by *Huddleson,* and reaffirmed in *Hirst,* not only embraces the protection of children against the annoyance or molesting of children (Pen. Code, § 647a), or from drug traffic and use (see *People* v. *Junious, supra,* 30 Cal.App.3d 432, 436-438; and *People* v. *Bevins* (1970) 6 Cal.App.3d 421, 425-426 [85 Cal.Rptr. 876]), or gambling, disturbing the peace and unlawful assemblies (Pen. Code, §§ 330, 415 and 308; *People* v. *Frazier, supra,* 11 Cal.App.3d 174, 183-184), but also from any disruption or interference with the activities of the school or its students. (See Pen. Code, § 626.8; and Ed. Code, § 13558.5. Note also, Pen. Code, § 602, subd. (*l*), and 602.5.) The difficulty with this analysis is that the appellant was arrested and charged, not with a trespass in violation of any of the foregoing sections but with loitering "about" the high school. As we have seen, at the time of his arrest he had voluntarily abandoned any trespass, and there is no evidence to show he was contemplating any further civil or criminal trespass.

If the proceedings may be deemed to relate back to appellant's prior conduct there is the question of whether "about" as used in the statute means "*on* and about" or more conventional dictionary definitions such as "on all sides," "in the vicinity," "near," "around the outside," "in the immediate neighborhood of" etc. (See Webster's Third New Internat. Dict. (1961) p. 5.) The fact that the Legislature has adopted a detailed schedule of offenses dealing with conduct on university, college, community college and school premises (Pen. Code, pt. 1, tit. 15, ch. 1, §§ 626-626.11) could indicate either that the provisions of section 653g are inapplicable, or that they should be extended to include anyone on the school premises who is lingering, waiting or delaying for the purpose of violating any of such provisions.

Section 653g has been applied to conduct observed on school premises which would reflect criminality whether occurring on or about the premises. (See *People* v. *Bevins, supra,* 6 Cal.App.3d 421, 425-426; and *People* v. *Junious, supra,* 30 Cal.App.3d 432, 436-438.) Other attempted

uses of section 653g to punish conduct which would not be an offense if committed off school premises have failed. In *People* v. *Hirst, supra,* 31 Cal.App.3d 75, the court observed, "Since section 653g in its present form applies to places other than school grounds, its constitutional application to persons not upon school grounds depends upon the use of the word 'loiter' as having a sinister implication. Although the same word may have different meanings when used in different places in the same statute [citations], here it is used only once." (31 Cal.App.3d at p. 82.) Moreover, the court there explained an earlier case as follows: "The vice of the pleading in *Mandel* v. *Municipal Court, supra,* 276 Cal.App.2d 649, was that it showed upon its face that the purpose for which Mandel was upon the school grounds was the distribution of printed matter which the Court of Appeal held to be an exercise of First Amendment rights and not an unlawful purpose, *since the statute did not declare that being upon the school grounds without permission was a violation.*" (31 Cal.App.3d at p. 82, italics added. See also, 276 Cal.App.2d at p. 668.) From the latter we infer that appellant if chargeable with any offense was chargeable with a trespass rather than a violation of section 653g. (See e.g., *Marvin F.* v. *Superior Court* (1977) 75 Cal.App.3d 281, 285-286 [142 Cal.Rptr. 78].)

The last conclusion is fortified by analogy to the following general principle, "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication." (*People* v. *Breyer* (1934) 139 Cal.App. 547, 550 [34 P.2d 1065, 1067]. See also *People* v. *Ruster* (1976) 16 Cal.3d 690, 694-699 [129 Cal.Rptr. 153, 548 P.2d 353]; *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479-481 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; and *People* v. *Swann* (1963) 213 Cal.App.2d 447, 449-451 [28 Cal.Rptr. 830]. Cf. *Gilbert* v. *Municipal Court* (1977) 73 Cal.App.3d 723, 726-728 [140 Cal.Rptr. 897]; *People* v. *Barrowclough* (1974) 39 Cal.App.3d 50, 53-56; and *People* v. *Gingles* (1973) 32 Cal.App.3d 1030, 1034-1040 [108 Cal.Rptr. 744].) In this case it would be improper to read into section 653g an intent to embrace within the scienter for an offense under that section, the completed act, if a criminal trespass, which is specifically covered elsewhere.

In view of the foregoing conclusion no opinion is expressed as to whether appellant committed a criminal trespass in violation of Penal Code sections 602, subdivision (*l*) (cf. *People* v. *Wilkinson* (1967) 248 Cal.App.2d Supp. 906, 910-911 [56 Cal.Rptr. 261]), 602.5 (noncommercial dwelling house, apartment or other place), 626.2 (suspended or dismissed student), 626.6 (refusal to leave), 626.8 (disruption by person not on lawful business), or Education Code section 13558.5 (willful interference with classroom conduct).

The People ask, "The larger question presented by this case is how a school can keep order and control over pupils and the administration of school activities if nonstudents can interfere at will. How many warnings must the school issue before action can be taken?" It is not every violation of rights that gives rise to a criminal prosecution. Assuming appellant erred, on this record where the entry and departure were volitional and the library attendant testified there was no disruption by appellant, there may have been a wrong without a remedy in the criminal courts. There was certainly no loitering that was engaged in for the purpose of committing a crime as opportunity might be discovered, as required under the provisions of section 653g. Not every act of juvenile disobedience is cognizable under section 602 of the Welfare and Institutions Code. It must be a violation of a law defining crime.

We note that sections 626.6 and 626.8 deal with persons who remain on school premises and who fail to leave or remain there, or reenter within 72 hours after being directed or asked to leave. The former covers any person, not a student, or officer, or employee, or one required to be on the premises by virtue of his employment, who is directed to leave when "it reasonably appears ... that such person is committing any act likely to interfere with the peaceful conduct of the activities of such campus or facility or has entered such campus or facility for the purpose of committing any such act, ..." The latter covers any person who comes into any school premises "without lawful business thereon, and whose presence or acts interfere with the peaceful conduct of the activities of such school or disrupt the school or its pupils or school activities, ..." The Legislature, in criminalizing the failure to leave, has indicated that in the absence of some express criminal act committed on the premises, there is to be no criminal punishment of one who complies with the direction or request to leave merely because he was technically a trespasser. It would be inconsistent to assume that under the provisions of

section 653g the Legislature intended to punish the nondisturbing trespasser who voluntarily left the premises.

The finding and order appealed from are reversed.

Racanelli, P. J., concurred.