Filed 2/23/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re GARY H., a Person Coming Under the Juvenile Court Law. | No. B264078 |
| | (Super. Ct. No. PJ51304) |
| THE PEOPLE, Plaintiff and Respondent, v. GARY H., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Fred J. Fujioka, Judge.  Affirmed.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David A. Voet, Deputy Attorney General, for Plaintiff and Respondent.

Police arrested 17-year-old Gary H. (Gary) after they found him loitering near a school. The District Attorney in Los Angeles filed a petition under Welfare and Institutions Code section 602 charging him with violating Penal Code section 653b,[1] loitering about a school, and Health and Safety Code section 11350, possession of a controlled substance. At a contested adjudication hearing, the juvenile court dismissed the controlled substance charge but found the loitering charge true and placed Gary home on probation. We consider whether section 653b is unconstitutionally vague and whether sufficient evidence supports the juvenile court's true finding.

I

The facts are not complicated. Gary attended Jane Addams High School in Granada Hills until school administrators dismissed him for committing what were described at the adjudication hearing as "various infractions." On September 30, 2014, police arrested Gary near his old school. We summarize the events that led to his arrest that day, and the subsequent juvenile court proceedings.

James Kilroy was the principal at Jane Addams High, and he knew Gary as a prior student of the school. At approximately 1:00 p.m., the students at Jane Addams were leaving for the day, and Kilroy was standing near the front gate in the chain link fence around the school. He observed Gary and another student on the sidewalk outside the gate, and they were having an "animated, angry exchange" with a student inside the high school gate. Kilroy believed the exchange was heated because voices were raised and Gary and his companion were yelling "angry sort of stuff" to someone inside the gate. Kilroy told his students to get back inside the school and he told Gary and the other student outside the gate "to move on their way, basically to knock it off."

After Kilroy told Gary and his companion to leave, they quickly went around the corner to another street abutting the high school campus. On that street, there is another

---

[1]    Undesignated statutory references that follow are to the Penal Code.

2

chain link fence gate to the school, and Kilroy hustled over to that spot; he thought a fight might break out and he was afraid that someone was going to hop the fence. At this point, Kilroy was outside the fence on the sidewalk and he saw Gary and his companion up close to the fence "saying stuff" and making "angry, animated sort of gestures to somebody inside [the] high school." Kilroy told Gary and the other student to "get out of here," or words to that effect.

When Kilroy told both minors to leave, they "basically ignored" Kilroy. Gary was dismissive and said something to the effect of, "Go back to your office. I don't have to do what you say." Kilroy warned Gary and the other minor that he would have to call the school police if they did not leave. They responded by telling Kilroy to go ahead and call the police, which he did.

Within a couple minutes, police patrol cars arrived on the scene. Fernando Ochoa, one of the responding officers, saw Gary and his companion, and the two juveniles began to walk away when they saw the police. Kilroy waived at the police and pointed at Gary and the other minor. Ochoa and his partner told Gary and his companion to stop walking away because the officers needed to talk to them. Ochoa described Gary as "verbally aggressive" because he did not want to obey Ochoa's command to stop. Gary told Ochoa that he (Gary) knew what he was doing there, that he knew his rights, and that Ochoa could not talk to him or stop him. Gary eventually stopped, however, and when he did, Kilroy identified Gary and his companion as the two minors that prompted his call to the police. Ochoa placed Gary in handcuffs for security purposes. Gary again said he knew his rights and told Ochoa he had no probable cause for the stop. After a pat-down search (during which they found him in possession of a Xanax pill), officers arrested Gary.

At the juvenile court adjudication hearing, Gary testified in his own defense. According to Gary, he was outside Jane Addams High during the afternoon in question to meet with one of his friends. While he was outside waiting, he was talking to his friends, one of whom told Gary that two of his buddies were going to "get into some type of altercation." Gary testified that he walked around the corner to the school's side gate and

3

learned that his friend Jose was supposedly going to fight his friend Diego. Gary asked both friends why they were going to fight and what the problem was, telling both he thought they were friends. Gary further testified that when Officer Ochoa arrived on the scene and told Gary to come over, Gary "kind of like hesitated" and was about to walk away. But when Gary saw a second police car arrive, he complied with Officer Ochoa's directions.

On cross-examination, Gary admitted he was "kicked out" of Jane Addams High because he failed to do his detention hours. Gary also admitted that Kilroy told him to leave two or three times and it was only at that point that Gary started walking up the street. According to Gary, Kilroy followed and was "trying to have me obey some type of order," although Gary could not recall exactly what Kilroy was saying. Gary told Kilroy to go back to his office and leave him alone.

After the presentation of evidence, the juvenile court heard argument from counsel. Gary's attorney argued section 653b was "very vague," and "in order for [] section 653b to be constitutional, Gary must have been at the school with the intent to commit a crime, and we haven't heard any testimony to that effect." The deputy district attorney argued the evidence established the elements of loitering, including the element requiring proof of a suspect's intent to commit a crime if the opportunity arose.

The juvenile court sustained the section 653b charge as proven beyond a reasonable doubt, expressly finding that Gary remained at the school with intent to engage in a fight: "I'm going to find specifically that the minor was at or about the school in that he was on the sidewalk immediately adjacent to the school, that he had the specific intent to engage in a fight. That's why the principal asked him to leave. He was asked three times, and he still remained on the sidewalk adjacent to the school."

II

This case joins a question that is primarily factual, whether sufficient evidence supports the true finding on the section 653b charge, with a question that is primarily

4

legal, whether section 653b is unconstitutionally vague. As we will demonstrate, the questions are interrelated. We hold that section 653b passes constitutional muster because it includes a scienter element: it requires proof that a person loitering near a school had the specific intent to commit a crime. We further hold the evidence was sufficient to establish Gary had such an intent in this case.

A

Section 653b, as it read at the time of Gary's offense (and as it reads today), provides in relevant part as follows: "[E]very person who loiters about any school or public place at or near which children attend or normally congregate and who remains at any school or public place at or near which children attend or normally congregate, or who reenters or comes upon a school or place within 72 hours, after being asked to leave by the chief administrative official of that school . . . is a vagrant, and is punishable by a fine of not exceeding one thousand dollars ($1,000) or by imprisonment in a county jail for a period not exceeding six months, or by both that fine and imprisonment. [¶] As used in this section, 'loiter' means to delay, to linger, or to idle about a school or public place without lawful business for being present." (§ 653b, subds. (a), (d).)

"'The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of "life, liberty, or property without due process of law," as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7).' (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567.) 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.' (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484.)" (*People v. Garcia* (2014) 230 Cal.App.4th 763, 768; see also *People v. Morgan* (2007) 42 Cal.4th 593, 605-606.)

Relying on the accepted void-for-vagueness test, Gary contends section 653b does not define the proscribed offense "with sufficient definiteness that ordinary people can

5

understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender v. Lawson* (1983) 461 U.S. 352, 357 (*Kolender*); *People v. Morgan, supra*, 42 Cal.4th at p. 605.) To understand why his contention fails, we must first describe the historical development of section 653b and another loitering statute, along with the judicial decisions interpreting each. (See generally *McSherry v. Block* (9th Cir. 1989) 880 F.2d 1049, 1056-1057.)

1

The earliest statutory predecessor for what is now section 653b was section 647a, originally enacted in 1929. (Stats. 1929, ch. 376, § 1, p. 697 ["Every person who annoys or molests any school child or who loiters about any school or public place at or near which school children attend, is a vagrant . . . ."].) In the 1960's, our Supreme Court and this court confronted constitutional vagueness challenges to that predecessor statute (as amended) and to another statute proscribing loitering, section 647.

The first of these two cases, the case involving section 647, was before our Supreme Court in 1961. (*Ex Parte Cregler* (1961) 56 Cal.2d 308 (*Cregler*).) The statute at issue provided, in relevant part, that "[e]very person known to be a pickpocket, thief, burglar or confidence operator, either by his own confession, or by his having been convicted of any such offenses, and having no visible or lawful means of support, when found loitering around any steamboat landing, railroad depot, banking institution, broker's office, place of amusement, auction room, store, shop or crowded thoroughfare, car, or omnibus, or any public gathering or assembly; . . . [¶] Is a vagrant, and is punishable by a fine . . . or by imprisonment . . . ." (*Id.* at p. 309, fn. 1.) Our Supreme Court upheld the validity of the statute by construing the word "loiter" to require proof of a sinister or wrongful intent: "As proscribed by the statute the word 'loiter' obviously connotes lingering in the designated places for the purpose of committing a crime as

opportunity may be discovered."[2] (*Id.* at pp. 311-312 [mere waiting for any lawful purpose does not constitute loitering].)

In the second case, *In re Huddleson* (1964) 229 Cal.App.2d 618 (*Huddleson*), the First District rejected a constitutional vagueness challenge to section 647a—the early predecessor to the statute now before us. In its then-existing form, subdivision (2) of section 647a provided: "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine . . . or by imprisonment . . . ." (Stats. 1957, ch. 1735, § 1, p. 3120; *Huddleson, supra*, at p. 620.) The Court of Appeal upheld section 647a, following the rationale of *Cregler*. Like our Supreme Court in *Cregler*, the Court of Appeal construed the word "loiter" as used in the statute to have a restricted and sinister sense, and so construed, concluded the statute was not unconstitutionally vague: "It is only when the loitering is of such a nature that from the totality of the person's actions and in the light of the prevailing circumstances, it may be reasonably concluded that it is being engaged in 'for the purpose of committing a crime as opportunity may be discovered' (*In re Cregler, supra*[, 56 Cal.2d 308]) that such conduct falls within the statute. We therefore hold that the term loiter has a clear and reasonably definite significance in the context of the statute, that it is not so vague and indefinite as to offend constitutional guarantees . . . ." (*Huddleson, supra*, at pp. 625-626.)

After the *Huddleson* decision, the Legislature recodified section 647a, subdivision (2) as section 653g. (Stats. 1967, ch. 154, § 2, pp. 1241-1242.) The Legislature subsequently amended the statute in 1970, adding a definition of "loiter." (Stats. 1970,

---

[2] Gary claims in his opening brief that *Cregler* "specifically declined to consider" the discriminatory enforcement prong of the vagueness test, citing to page 313 of the *Cregler* court's opinion. That is inaccurate. The court in that case did not specifically decline to consider whether the statute encouraged arbitrary enforcement; rather, the court stated it would not consider whether the statute was vague in its possible application to others not similarly situated to the petitioner in that case. (*Id.* at p. 313.)

7

ch. 977, § 1, p. 1747 [defining loiter to mean "to delay, to linger, or to idle about any such school or public place without a lawful purpose for being present"].)

Following the 1970 amendment, this court was again called to decide a vagueness challenge to the statute. The defendant in *People v. Hirst* (1973) 31 Cal.App.3d 75 (*Hirst*) argued the Legislature's decision to add the definition of loiter to section 653g vitiated the earlier saving construction the *Huddleson* court adopted by relying on *Cregler*. That is, the defendant claimed the statute no longer required proof of a specific intent to commit crime as the opportunity arose, which was the key element upon which the constitutionality of the statute turned. (*Id.* at p. 79.) The Court of Appeal rejected this argument. Citing the maxim that courts presume a Legislature is aware of and approves a prior judicial construction of a statute that is not altered by subsequent legislation (*ibid.*), the *Hirst* court held the "statute as amended is constitutional and its constitutionality is based upon the same meaning of the word 'loiter' given to its use in the preceding statute by those decisions that held such former statute to be constitutional" (*id.* at p. 82). Other decisions of roughly the same vintage as *Hirst* recognize section 653g had been upheld against constitutional challenge because one could not violate the statute absent proof of intent to commit a crime while lingering or remaining in the area of a school. (*In re Christopher S.* (1978) 80 Cal.App.3d 903, 907-908; *People v. Frazier* (1970) 11 Cal.App.3d 174, 182-183 (*Frazier*); see also *People v. Bevins* (1970) 6 Cal.App.3d 421, 425.)

With additional amendments not germane to this appeal, Section 653g was recodified as section 653b in 2006. (Stats. 2006, ch. 337, § 27, pp. 2632-2633.) The core of present-day section 653b, however, is the same as the core of the statutory provisions upheld in *Hirst* and *Huddleson*—it makes it a crime for a person to "loiter" about a school. (§ 653b ["[E]very person who loiters about any school . . . is punishable . . . ."].) Applying the same maxim as in *Hirst*, *supra*, 31 Cal.App.3d at p. 79, we presume the Legislature was aware and approved of the prior longstanding judicial construction of the statute, and we therefore construe the word "loiter" in section 653b to proscribe "only that

8

species of 'lingering' and 'idling' about schools or public places which is engaged in for an evil or sinister purpose," namely "for the purpose of committing a crime as opportunity may be discovered."[3] (*Cregler*, *supra*, 56 Cal.2d at pp. 311-312; *Huddleson*, *supra*, 229 Cal.App.2d at p. 623; see also *People v. Childs* (2013) 220 Cal.App.4th 1079, 1104 [once statute is construed by the courts, we presume the Legislature approved of the construction if it does not alter it].)  Having so construed the term loiter in section 653b, we will adhere to precedent and reject Gary's vagueness challenge unless—as he urges— other decisions have undermined the rationale of the cases we have discussed.

2

Gary cites three United States Supreme Court decisions, *City of Chicago v. Morales* (1999) 527 U.S. 41 (*Morales*), *Kolender*, *supra,* 461 U.S. 352, and *Papachristou v. City of Jacksonville* (1972) 405 U.S. 156 (*Papachristou*), and one California Supreme Court case, *People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381 (*Caswell*), to support his claim that section 653b is impermissibly vague.  These cases, however, do not help Gary; if anything, they lend further support to the conclusion that section 653b is not vague because, as construed, it includes a specific intent element.

In *Morales,* the Supreme Court considered a vagueness challenge to Chicago's anti-gang loitering ordinance.  The Court summarized the relevant elements of the ordinance as follows:  "First, the police officer must reasonably believe that at least one of . . . two or more persons present in a '"public place"' is a '"criminal street gang membe[r]."'  Second, the persons must be '"loitering,"' which the ordinance defines as 'remain[ing] in any one place with no apparent purpose.'  Third, the officer must then

---

**3**      We do not understand the "as opportunity may be discovered" language in *Cregler* to modify the substantive content of the intent element.  That is, the intent element we construe section 653b to include is more simply described as requiring proof of intent to commit a crime.  The "as opportunity may be discovered" reference in *Cregler* adds only the unremarkable observation that a person who forms an intent to commit a crime does so planning to act on that intent when the opportunity presents itself.

order '"all"' of the persons to disperse and remove themselves '"from the area."' Fourth, a person must disobey the officer's order. If any person, whether a gang member or not, disobeys the officer's order, that person is guilty of violating the ordinance." (*Morales*, *supra*, 527 U.S. at p. 47.) The majority held the ordinance was unconstitutionally vague because it did not satisfy the second prong of the vagueness test: it failed to establish minimal guidelines to govern law enforcement. (*Id.* at pp. 56, 60.) The Court specifically faulted the ordinance's "no apparent purpose" definition of loitering, finding that it was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene." (*Id.* at p. 62; see also *id.* at p. 66 (conc. opn. of O'Connor, J.) [any person standing on the street has a purpose, even if it is simply to stand].) Importantly, the Court's opinion also found it significant that Chicago's ordinance did not require any showing that the loitering had a harmful purpose (*id.* at p. 62; see also *id.* at p. 55 (plur. opn. of Stevens, J.)), and a majority of the Court stated the ordinance would meet constitutional standards if it applied only to loitering with such a purpose. (*Id.* at p. 62; see also *id.* at p. 57 (plur. opn. of Stevens, J.) ["a number of state courts . . . have upheld ordinances that criminalize loitering combined with some other overt act or evidence of criminal intent"]; *id.* at pp. 67-68 (conc. opn. of O'Connor, J.) ["the Court properly and expressly distinguishes the ordinance from laws that require loiterers to have a 'harmful purpose'"].)

*Morales* therefore provides no support to Gary's contention that section 653b is void for vagueness, nor does the opinion undermine the California cases upholding section 653b's statutory predecessors. By criminalizing loitering only where the loiterer has the specific intent to commit a crime, section 653b is nothing like the standardless "no apparent purpose" definition of loitering in the Chicago ordinance that the Court found problematic. Rather, section 653b as we construe it is the type of statute that the Court suggested should be upheld against a vagueness challenge.

10

The Supreme Court in *Kolender* struck down on vagueness grounds former section 647, subdivision (e),[4] which had been construed by this court to permit punishment of any person loitering or wandering on the streets that fails to provide "credible and reliable" identification when requested by a peace officer. (*Kolender*, *supra*, 461 U.S. at p. 353.) The Court explained that the more important aspect of the void-for-vagueness doctrine is the second prong that asks whether the challenged provision establishes "'minimal guidelines to govern law enforcement,'" and the Court found subdivision (e) defective on that ground. (*Id.* at pp. 358, 361.) Specifically, the Court reasoned that the statute as construed "contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification" and "vests virtually complete discretion in the hands of the police . . . ." (*Id.* at p. 358.)

*Kolender* does not require reversal here. There is no language in section 653b that is similar to the problematic requirement in that case, one that imposed an uncertain obligation on a suspect to produce credible and reliable identification. Just as important, our interpretation of "loiter" in section 653b to include an element requiring proof of intent to commit a crime, incorporates a specific intent element in section 653b that was conspicuously absent in subdivision (e). That specific intent element inverts the respective obligations of the police and suspect, making the People responsible for proving a suspect loitered with intent to commit a crime rather than, as in *Kolender*, making the suspect responsible for attempting to produce identification that will satisfy "'"'the moment-to-moment judgment of the policeman on his beat.'"'" (*Id.* at p. 360.)

The *Papachristou* decision also fails to support Gary's argument for reversal, and for the same reason we have already discussed in connection with *Morales* and *Kolender*.

---

[4]    That statute provided:  "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . . (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification." (*Kolender*, *supra*, 461 U.S. at p. 353, fn. 1.)

11

At issue in *Papachristou* was a Jacksonville, Florida ordinance that designated "persons wandering or strolling around from place to place without any lawful purpose or object" as vagrants subject to punishment by fine, jail, or both. (*Papachristou*, *supra*, 405 U.S. at p. 156, fn. 1.) The Supreme Court invalidated the ordinance on vagueness grounds, holding that it failed to give a person of ordinary intelligence notice of the conduct prohibited and encouraged arbitrary and erratic arrests and convictions. (*Id.* at p. 162; see also *id.* at p. 170 [emphasizing the second prong of the test, the absence of standards to govern the discretion of the police and the courts].) The Supreme Court's analysis, however, depended in part on its observation that those within the ambit of ordinance were not "protected from being caught in the vagrancy net by the necessity of having a specific intent to commit an unlawful act." (*Id.* at p. 163, citing *Screws v. United States* (1945) 325 U.S. 91 (*Screws*).) Of course, section 653b as we construe it includes just such a protective element and that element suffices to alleviate vagueness concerns—a principle repeatedly affirmed by more recent Supreme Court authority. (See, e.g., *McFadden v. United States* (2015) 135 S.Ct. 2298, 2307 ["Under our precedents, a scienter requirement in a statute 'alleviate[s] vagueness concerns,' 'narrow[s] the scope of the . . . prohibition[,] and limit[s] prosecutorial discretion'"]; *Skilling v. United States* (2010) 561 U.S. 358, 412 [statute's mens rea requirement "further blunts any notice concern"]; *Gonzales v. Carhart* (2007) 550 U.S. 124, 149.)

Undeterred by the foregoing points in favor of the constitutionality of section 653b, Gary advances a novel twist on the void-for-vagueness argument, namely, the claim the statute's specific intent element is not sufficiently specific to save it. That is, he argues the requirement that a loiterer have the intent to commit a crime is too broad a limitation because it would cover *any* crime whereas the loitering statutes upheld in prior California cases were, he asserts, targeted at specific crimes or classes of crime. Upon examination, however, Gary's argument fails based on the very cases he cites to support it—including our Supreme Court's decision in *Caswell*, *supra*, 46 Cal.3d 381.

12

The statute at issue in *Caswell*, section 647, subdivision (d), makes it a crime for any person to "loiter[] in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act." (§ 647, subd. (d); *Caswell*, *supra*, 46 Cal.3d at p. 388.) The Supreme Court recognized that prior cases, including *Cregler*, had made clear a statute is not impermissibly indefinite because it uses the word "loiter" (*Caswell*, *supra*, at p. 390), and the court found that subdivision (d) was sufficiently definite to withstand a constitutional vagueness challenge. (*Id.* at p. 388.) Gary, however, emphasizes the court reached that conclusion only by narrowly interpreting the phrase "or any unlawful act" in the statute's intent element to mean "a lewd act." (*Id.* at p. 391, fn. 3.) By interpreting the phrase in that narrow manner, the majority avoided the dissent's criticism that "any unlawful act" failed to provide constitutionally adequate notice of the prohibited conduct. (*Ibid.*; see also *id.* at p. 405 (dis. opn. of Mosk, J.).) Gary reasons the majority's narrow interpretation of "any unlawful act" is an indication that the court would disapprove of an intent element that is not restricted to enumerated crimes—like the element included in section 653b that requires proof of loitering with intent to commit "a crime."

Gary reads too much into the opinion in *Caswell*. The majority in that case did not hold an intent element of the type included in section 653b would be too broad to alleviate constitutional vagueness concerns. Indeed, quite the opposite. Our Supreme Court in *Caswell* cited its prior decision in *Cregler*, acknowledging it had "sustained a different, much less specific, loitering statute against a vagueness challenge" in that case. (*Id.* at p. 390.) As we have explained, the statute at issue in *Cregler* was construed to incorporate the same specific intent element that we hold section 653b includes. We understand the *Caswell* court's citation to *Cregler*—without any indication that decision was disapproved—as evidence of *Cregler*'s continuing vitality. And *Cregler* compels us

13

to reject Gary's contention that section 653b's intent element is itself too vague to save the statute from a vagueness challenge.[5]

Gary also misreads the First District's opinion in *Huddleson*. He asserts the decision in that case "found that former Penal Code section 647a, subdivision (2)[,] was not impermissibly vague[] if the specific intent to molest children was read into it." That is not what *Huddleson* held. The majority in that case did recognize the overall purpose of section 647a was to protect school children (*Huddleson*, *supra*, 229 Cal.App.2d at pp. 623, 625), but the opinion interpreted the word loiter to require proof only of intent to commit "some criminal act." (*Id.* at p. 623.) Nowhere in the opinion did the court hold the statute at issue required proof of a loiterer's intent to molest children; rather, the court rested its holding on the broader formulation of intent that our Supreme Court found sufficient to reject a vagueness challenge in *Cregler*, namely, that lingering about a school was "'for the purpose of committing a crime as opportunity may be discovered.'" (*Id.* at pp. 625-626; see also *Hirst*, *supra*, 31 Cal.App.3d at p. 79 [*Huddleson* and other cases upheld loitering statutes by construing "loiter" to mean loitering for the purpose of committing a crime as opportunity may arise]; *People v. Frazier*, *supra*, 11 Cal.App.3d at pp. 182-184.)

*Papachristou*, *supra*, 405 U.S. 156, further reinforces our conclusion that the "intent to commit a crime" element of section 653b suffices to save the statute from void-for-vagueness concerns. The Supreme Court invalidated the Jacksonville ordinance in that case only after noting it did not require a specific intent to commit "an unlawful act" that would protect the "poor among us, the minorities, [and] the average householder"

---

**5** Gary states that the statute in *Cregler* was aimed at a specific group of people: pickpockets, thieves, burglars, or confidence operators. That is true, but it is also immaterial to the argument Gary makes here. The *Cregler* court upheld the statute at issue against a vagueness challenge by construing it to require a specific intent to commit a crime, not an enumerated crime or class of crimes. The decision therefore establishes the key point that refutes Gary's argument: a specific intent element in a statute need not identify a particular crime or category of crimes to withstand an attack on vagueness grounds.

14

from an ill-defined and arbitrarily enforced vagrancy offense. (*Id.* at pp. 162-163 ["Nor are they protected from being caught in the vagrancy net by the necessity of having a specific intent to commit an unlawful act"].) The Supreme Court's use of the "an unlawful act" formulation in describing the intent that would protect against arbitrary enforcement of the vagrancy ordinance belies defendant's claim that only an intent to commit a specific crime or class of crimes may rescue an otherwise vague statute. The *Papachristou* majority's citation to its prior decision in *Screws* on this point is particularly telling. In that case, the Supreme Court upheld a criminal civil rights statute against a vagueness challenge by construing the statute to apply only if a defendant has the specific intent "to deprive a person of a right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them." (*Screws*, *supra*, 325 U.S. at p. 104.) If a specific intent to commit an unlawful act, or to violate a constitutional right made definite by the Constitution itself, any federal law, or any judicial decision, suffices to insulate a statute from attack on vagueness grounds, we see no basis to hold 653b unconstitutionally vague because its specific intent element requires proof of intent to commit "a crime" as opposed to a designated criminal offense.

We recognize section 653b, even as we construe it to require proof that loitering is done with intent to commit a crime, affords discretion to those that would enforce it. No statute can eliminate the possibility that such discretion might be abused. Guided by Supreme Court precedent and prior decisions of this court, however, we are convinced that section 653b does provide "'minimal guidelines to govern law enforcement.'" (*Kolender*, *supra*, 461 U.S. at p. 358). It includes a specific intent element that requires an arresting officer to have evidence establishing probable cause to believe a suspect intends to commit a crime. (*Caswell*, *supra*, 46 Cal.3d at p. 394 [discussing probable cause requirement].) Enforcement of the statute is limited to a specific place, namely, areas about a school—a feature courts have found significant in rejecting vagueness challenges to loitering statutes. (*Id.* at p. 399 ["Aside from the scienter requirement, the

15

language in section 647(d) that specifies the place of enforcement also serves to mitigate the potential vagueness of the statute"]; *Morales*, *supra*, 527 U.S. at p. 67 (conc. opn. of O'Connor, J.) [majority opinion distinguishes the invalid Chicago ordinance from "laws that incorporate limits on the area and manner in which the laws may be enforced"].) Of course, section 653b is also limited because it applies only to those who remain or linger near a school, not mere passersby or individuals who stop but then move on their way. We believe these features sufficiently circumscribe how the statute may be enforced, and Gary cannot seek to invalidate the statute on a hypothetical state of affairs when—as we will explain momentarily—it was validly invoked as to him. (*Holder v. Humanitarian Law Project* (2010) 561 U.S. 1, 18-19 ["We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.' [Citation.]"].)

The Supreme Court rightly recognized in a different context that schools are "sensitive places." (*District of Columbia v. Heller* (2008) 554 U.S. 570, 626 [Second Amendment does not cast doubt on laws prohibiting carrying firearms in sensitive places like schools].) The Legislature made the judgment—based at least in part on that special sensitivity—that a person found near a school who remains in the area and exhibits behavior demonstrating a nefarious intent to commit a crime should be subject to apprehension and punishment. We hold that section 653b, as construed, achieves that end in a constitutional manner because it provides reasonable notice of what is prohibited to the ordinary citizen and does not encourage discriminatory enforcement.


B

Gary argues insufficient evidence supports the juvenile court's true finding on the section 653b allegation. There is no dispute that Gary lingered or remained about Jane Addams High after Kilroy, the school's principal, asked him to leave—multiple times. The only question is whether the evidence is sufficient to support the juvenile court's

16

finding that Gary satisfied section 653b's specific intent element because he intended to commit an assault, i.e., engage in a fight. (§§ 240, 241; see also § 241.2.)

A juvenile court makes a jurisdictional finding under Welfare and Institutions Code section 602 based on the beyond a reasonable doubt standard. (Welf. & Inst. Code § 701.) In an appeal challenging the sufficiency of the evidence before the juvenile court, "'"'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]'" (*People v. Williams* (2015) 61 Cal.4th 1244, 1281; *In re V.V.* (2011) 51 Cal.4th 1020, 1026; see also *Frazier*, *supra*, 11 Cal.App.3d at p. 183 [intent to commit a crime may be inferred].) "'[I]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]'" (*In re V.V.*, *supra*, at p. 1026.)

There is substantial evidence to support the juvenile court's finding that Gary loitered at Jane Addams High with the specific intent to commit an assault. Kilroy observed Gary, who had been dismissed from the school for various disciplinary infractions, having an "angry, animated exchange" with someone at the school. Even after Kilroy asked Gary to leave the area, Gary quickly walked around the corner to another area where there is a gate to school grounds. While "up close" on that alternate gate, Gary continued "saying stuff" to someone on school grounds and he was making angry, animated gestures. Kilroy testified that he hustled over to that gate because he was worried a fight was going to break out. When Kilroy again told Gary to leave and said he

17

would call the police, and Gary's response was first to tell Kilroy to go back to his office and then to tell him to go ahead and call the police. These facts, particularly the angry, animated words and gestures Gary directed toward a student or students inside the gate constitute substantial evidence that Gary intended to commit an assault.[6] Gary suggests the evidence is insufficient because Kilroy could not hear exactly what Gary was saying and whether he was using profanity, but angry and animated words and gestures, even where it is unclear what precisely was said, can be sufficient indicia to permit a factfinder to infer an intent to engage in a fight, as it was here.[7] (*Frazier*, *supra*, 11 Cal.App.3d at p. 183 [intent can be inferred from all the circumstances]; see also *People v. Lopez* (2015) 240 Cal.App.4th 436, 454 [intent is rarely susceptible of direct proof and must usually be inferred from all the facts and circumstances]; 1 Am. Jur. Proof of Facts 3d 613 (1988) Assault, § 2 ["Intent may be inferred from all the facts and circumstances, such as exhibitions of anger, threats, gestures, and other conduct"].)

Contrary to Gary's claim, this is not at all a case like *Hirst*, *supra*, 31 Cal.App.3d 75 or *In re Christopher S.*, *supra*, 80 Cal.App.3d 903. In *Hirst*, the defendants were on school grounds to distribute literature, and the Court of Appeal unsurprisingly held this was not an unlawful purpose that would support a loitering conviction under former section 653g. (*Hirst*, *supra*, at pp. 85-86.) *In re Christopher S.* involved a minor who was no longer enrolled at a high school but who came on campus to visit old friends in the library and then left on his own volition. (*In re Christopher S.*, *supra*, at pp. 906-907.) The Court of Appeal held "there [was] not a scintilla of evidence" that at the time

---

**6** That there was a gate separating Gary and his companion from the students at the school is of no moment. As Kilroy explained, someone intent on fighting could hop the fence.

**7** Indeed, there was no real dispute in the juvenile court that a fight was going to happen—Gary claimed that he was trying to stop a fight between two of his friends. The juvenile court was entitled to credit Kilroy's testimony and conclude it was in fact Gary that intended to instigate the fight.

18

of his arrest the minor intended to reenter the school without permission if the opportunity presented itself.  (*Id.* at p. 909.)

The juvenile court, after hearing testimony from Kilroy, the arresting officer, and Gary, expressly found Gary had the specific intent to commit a crime.  That determination—and the jurisdictional finding overall—is supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.

## CERTIFIED FOR PUBLICATION

BAKER, J.

We Concur:


TURNER, P.J.


KUMAR, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.