Jones, P.J.
*1290 Rafael C. (Minor) appeals from an order of the juvenile court sustaining a petition filed pursuant to Welfare and Institutions Code section 602.[1] The petition arose from an incident at Minor's high school in which a firearm was discovered on campus. School administrators suspected Minor's involvement, and in the course of questioning him, they seized and searched his cell phone. Interspersed with the text messages on the phone were a number of digital images, including a photograph of Minor holding what appeared to be the firearm found on campus. When the prosecution sought to use these images as evidence in the proceeding below, Minor unsuccessfully moved to suppress them. The juvenile court found Minor had possessed an assault weapon, and it declared him a ward of the juvenile court.
On appeal, Minor challenges the denial of his motion to suppress. In the published portion of our opinion, applying the twofold test established in *1291 New Jersey v. T.L.O. (1985) 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (T.L.O. ), we conclude the search of Minor's cell phone was reasonable. Considering all the circumstances, the juvenile court properly found the search was justified at its inception and permissible in scope. The lower court thus did not err in denying the motion to suppress.
In the unpublished portion of our opinion, we examine Minor's other contentions, and we find most of them unmeritorious. We agree with Minor, however, that (1) the dispositional order must be modified to reflect his maximum term of confinement and (2) the matter must be remanded to the juvenile court so that it may calculate the custody credits to which he is entitled.
*308 We affirm the judgment in all other respects.
PROCEDURAL HISTORY
The original petition, filed April 28, 2014, alleged Minor came within section 602 because on or about February 21, 2014, he possessed an assault weapon (Pen.Code, § 30605, subd. (a) ; count 1) and a short-barreled rifle (Pen.Code, § 33215 ; count 2).
Following hearings on August 29 and September 2, 2014, the juvenile court denied a motion to suppress evidence, sustained the petition, and found the offenses to be felonies.
On October 3, 2014, the juvenile court declared indefinite wardship, removed Minor from the custody of his parents, committed him to the Orin Allen Youth Rehabilitation Facility (OAYRF) for a regular six-month program, plus an additional 90-day conditional release/parole period. It also imposed various conditions of probation. Minor filed a timely appeal.
STATEMENT OF FACTS
We summarize below the facts of the offenses. As required when the juvenile court's findings are challenged under the substantial evidence rule, we must view the evidence in the light most favorable to the prosecution, and we presume the existence of every fact the court could deduce from the evidence. (In re Gary H. (2016) 244 Cal.App.4th 1463, 198 Cal.Rptr.3d 888.) Additional facts relating to the particular legal issues raised on appeal are set forth in the discussion section of this opinion.
Three witnesses, Antioch High School Assistant Principals Jason Murphy and Jarrod Bordi, and Antioch Police Officer Daniel Hopwood, testified at a combined suppression/jurisdictional hearing. We first recount the evidence *1292 relevant to the suppression motion before turning to additional evidence presented in support of jurisdiction.
Evidence Presented in Connection With Minor's Motion to Suppress
On the morning of February 21, 2014, a campus supervisor at Antioch High School became concerned about suspicious behavior by two students, who lacked corridor passes or a reason for their presence outside class. It was believed one of the students had a firearm he had discarded in a portable trash can on campus. The students were placed in adjoining offices inside the vice principals' suite and questioned about the firearm. The firearm (People's exhibit 1A) and its magazine cartridge (People's exhibit 1B) were seized from a trash can and taken to the principal's office where Murphy saw them. Murphy and other vice principals acted to secure the school and to provide direction to the supervisors.
Murphy participated in questioning the two students, and he communicated with a supervisor to ensure no students were in the hallways without a pass and to detect any suspicious student behavior. During a five-minute passing period, students passed the vice principals' offices in the main arcade of the school only once, which was the normal behavior of students changing classrooms in that timeframe. Murphy and the supervisor noticed Minor exhibiting "odd" behavior; he kept walking back and forth past the vice principals' offices. Minor passed by a number of times and looked into the office.
At one point, Minor entered the office, which students are forbidden to do without a pass or permission. Because of the firearm in the principal's office, the administrators immediately "shoo[ed]" Minor and other students out. Other students left *309 without questioning the situation, and Minor alone was "slow dragging" and "kind of lingered" by the office door. Eventually, Murphy asked Minor into the office to find out why he was there and determine the reason for his behavior. The administrators were concerned because they did not yet know if other parties were involved in bringing the firearm onto campus.
A supervisor instructed Minor to come into the office, but Minor ignored the request and kept walking. Murphy sent the supervisor after Minor, but Minor ignored the supervisor's call to return. Instead, Minor hurriedly walked away without turning around. The supervisor finally caught up with Minor and walked back with him to the office.
Minor was brought to a vice principal's office where he was questioned. Minor was asked why he had lingered outside and did not come back as *1293 requested. Minor became "physically fidgety" and "immediately reached down into his pocket." At the time, Murphy knew the student with the firearm had concealed it in his pants leg before he had discarded it into the trash can. When Minor reached into his pocket, Murphy was "concerned that maybe this student also had a concealed weapon" for which he was reaching, and told his colleagues, " 'Don't let him keep it in his pocket.' "
Minor resisted the administrators and he and they fell to the ground in a struggle. Murphy reached into Minor's pocket and realized he was resisting the administrators in order to try to interact in some way with his cell phone, so he removed the phone from Minor's pocket. Minor was then released from restraint and asked what he was doing, but he did not respond.
Murphy testified that the principal's protocol was that the vice principals are to search a student's cell phone on reasonable suspicion of a communication that could put a student or staff at risk of harm. Murphy was concerned Minor had used the phone to communicate with the student in custody about the firearm or possibly to communicate about another firearm or weapon. Murphy was aware the student with the firearm knew Minor and testified that Minor's academic assistant principal knew Minor was a friend of that student. Murphy was also aware that a verbal altercation had occurred that morning when the other student was "attempting to communicate with people on his cell phone while he was in the office being interviewed about having the firearm."
Murphy determined Minor had somehow turned off the cell phone. Not knowing how to turn the phone on, Murphy plugged it into a USB cable, which brought the phone back online. Minor's "collection of text messages and things" included photographs that "showed up" on the phone when "we brought it back online," and "we were to able to open it up[.]" The photographs were of students holding the confiscated firearm Murphy had seen earlier that morning in the principal's office. Murphy plugged the phone into the office computer and was able to take a screenshot of the photographs on the phone. The screenshots were printed, and the photographs in the computer system deleted. Over foundation and best evidence objections, Murphy identified a packet of photographs (People's exhibit 2) as the photographs he saw "on the student's phone and also on our computer when we plugged it in." Photographs in the exhibit packet depict Minor holding the firearm. Other photographs depict the same firearm. Murphy testified Minor's appearance in the photographs is consistent with how he looked on or about February 2014. Based on the evidence, the juvenile court found a reasonable administrative school search and denied the motion to suppress.
*310 *1294 Further Evidence Regarding Jurisdiction
At the time of the incident, Bordi was Minor's assistant principal for discipline at the school, which Minor had attended for the entire year. Bordi was involved in the investigation of the two students who brought the gun to school. He testified the administrators and supervisors were "really concerned" when Minor "seemed to be coming into the office, very interested, wanting to know what was going on. And we became more concerned on what connection he had to some of our other students."
That morning, Bordi's colleague recovered the photographs from the cell phone showing Minor holding the weapon, and Bordi had the opportunity to speak with Minor about his potential involvement in the incident with the gun at school. When questioned, Minor became irate and screamed profanities. Minor told Bordi, " 'Those are my photos. You can't do that.' " Minor got up and postured towards the vice principal. Campus supervisors were called; Minor became belligerent on their arrival and had to be subdued. The Antioch police were alerted that the student had lost control. Bordi suspended Minor that day.
Bordi testified Minor's appearance as depicted on the photograph on the first page of People's exhibit 2 was consistent with how he looked on February 21, 2014, including his wearing a sweatshirt like the one he had on in the photograph. Bordi reviewed Minor's attendance record, and there was no indication of any out-of-state travel.
Officer Hopwood testified he responded to the school on the report of a student with a firearm, and in the principal's office he took custody of the confiscated firearm and magazine cartridge. Hopwood identified People's exhibit 1A as a .22-caliber Ruger shortened to an 18.5-inch overall length and six-inch barrel. The gun bore the serration marks of obvious cuts from the removal of portions of the buttstock and the barrel of a rifle that originally was significantly longer. The alterations resulted in a pistol grip more convenient for close quarters concealment. Hopwood also testified the 30-round magazine attaches and detaches "right in front of the trigger housing" and "outside the pistol grip." The photograph on the first page of People's exhibit 2 shows the detachable magazine was attached in that forward position outside the pistol grip. People's exhibit 1B, a 30-round detachable magazine, was attached to the gun when taken into the officer's custody. A function check by Officer Hopwood showed the gun was operable. Officer Hopwood identified the weapon depicted in the photographs in People's exhibit 2 as the weapon he found at school that day and the "same gun I picked up that day I logged into evidence. And I brought it to and from the courtroom."
*1295 At the close of the evidence, the juvenile court again overruled the foundation objection to People's exhibit 2. The court sustained the petition beyond a reasonable doubt. It also found the offenses to be "serious felonious conduct," and found notice was given as required by law.
DISCUSSION
Minor raises a number of arguments on appeal. He contests the juvenile court's evidentiary rulings, its subject matter jurisdiction, its ruling on his motion to suppress, and its factual findings. He also contends it failed to fulfill certain statutory obligations, abused its discretion by declaring his offenses felonies, and imposed unconstitutional probation conditions. Finally, Minor argues the dispositional order must be modified to correct various defects.
*311 We will address these arguments in the order Minor presents them.
I.-II.**
III. Minor's Motion to Suppress Was Properly Denied
Minor contends the juvenile court erred in denying his motion to suppress evidence because the search of his cell phone lacked sufficient justification, was excessively intrusive, and required a warrant. We will examine these contentions after explaining the standards governing searches of students by school officials and the scope of our review.
A. Governing Law and Standard of Review
"[S]chool officials may conduct a search of the student's person and personal effects based on a reasonable suspicion that the search will disclose evidence that the student is violating or has violated the law or a school rule. 'Reasonable suspicion' is a lower standard than probable cause. Ultimately, the legality of the search 'depend[s], simply, on the reasonableness, under all the circumstances, of the search.' " (In re Cody S. (2004) 121 Cal.App.4th 86, 91, 16 Cal.Rptr.3d 653, fn. omitted (Cody S. ), quoting T.L.O., supra, 469 U.S. at p. 341, 105 S.Ct. 733.) In T.L.O.,"the court held that teachers and school officials need not obtain a warrant or have probable cause to search a student. 'Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.' [Citation.] The court set forth a twofold inquiry for determining the reasonableness of a student search. The *1296 action must be 'justified at its inception' and the search, as actually conducted, must be ' "reasonably related in scope to the circumstances which justified the interference in the first place." ' [Citation.] 'Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.' [Citation.]" (In re William V. (2003) 111 Cal.App.4th 1464, 1469, 4 Cal.Rptr.3d 695 (William V. ).)
On appeal from the denial of Minor's motion to suppress, we review the evidence in the light most favorable to the juvenile court's ruling. (William V., supra, 111 Cal.App.4th at p. 1468, 4 Cal.Rptr.3d 695.) We must uphold the lower court's express or implied findings if they are supported by substantial evidence, but we independently determine whether those facts support the juvenile court's legal conclusions. (Ibid . ) "As far as the legality of the search is concerned, it is irrelevant that the court relied on an erroneous legal theory if the court's ruling was correct on any legal theory which is applicable to the case." (Cody S., supra, 121 Cal.App.4th at p. 92, fn. 4, 16 Cal.Rptr.3d 653.) Finally, because the presence of weapons on school campuses is now an unfortunate fact of modern American life, "[w]e must be cognizant of this alarming reality as we approach our role in assessing appropriate responses by school administrators to campus safety issues." (In re J.D. (2014) 225 Cal.App.4th 709, 714, 170 Cal.Rptr.3d 464.)
*312 B. The Search Was Justified at its Inception
Minor contends the search of his cell phone was not justified at its inception because there was no reasonable suspicion he was guilty of wrongdoing. We disagree. The evidence before the juvenile court showed a firearm and its magazine cartridge were seized from a trash can where they had been discarded. Two students who were believed to have been in possession of the firearm were brought into an administrator's office for questioning. Minor was present in the hallway outside the office where the student with the gun was detained, and he was the only person walking back and forth outside the office. Minor entered the office, and he lingered at the door even after being told to leave. When a school official asked Minor to come into the office, Minor walked away quickly and ignored the official's order to stop. After he was taken into a vice principal's office, asked what he *1297 was doing outside the office and why he had ignored the official's directions, Minor immediately started fingering the cell phone in his pocket. He then physically resisted when school administrators tried to keep him from manipulating his phone and refused to explain why he had resisted them. Minor was also acquainted with the student who had brought the concealed weapon onto campus, and that student had triggered an incident himself by trying to communicate with someone on a cell phone during his own questioning.[3]
Based on these facts, the school officials had "reasonable grounds for suspecting that the search [would] turn up evidence that the student ha[d] violated or [was] violating either the law or the rules of the school." (William V., supra, 111 Cal.App.4th at p. 1469, 4 Cal.Rptr.3d 695.) This is particularly true when one considers the gravity of the situation that initially gave rise to the search-the discovery of a firearm and magazine on school grounds. (See In re J.D., supra, 225 Cal.App.4th at pp. 716-717, 170 Cal.Rptr.3d 464 [upholding as reasonable locker search and other measures taken by school officials after receiving report that student involved in earlier shooting was present on campus].) "The need of schools to keep weapons off campuses is substantial. Guns ... pose a threat of death or serious injury to students and staff. The California Constitution, article I, section 28, subdivision [ (f)(1) ], provides that students and staff of public schools have 'the inalienable right to attend campuses which are safe, secure and peaceful.' " (In re Latasha W. (1998) 60 Cal.App.4th 1524, 1527, 70 Cal.Rptr.2d 886.) Here, the facts outlined above-particularly Minor's evasive behavior and resistance to school officials-suggested he was either involved in a crime or was trying to hide evidence of one. (In re H.M. (2008) 167 Cal.App.4th 136, 144, 83 Cal.Rptr.3d 850 [minor's unusual, suspicious behavior and flight from scene "strongly suggested criminal activity was afoot"].) The juvenile court could properly find the search justified at its inception.
C. No Warrant Was Required
Minor also contends school officials were required to obtain a warrant before searching the data on his cell phone. In a brief, one-paragraph argument to the juvenile court, Minor asserted public school officials may not search a cell *313 phone without a warrant. He relied on the United States *1298 Supreme Court's decision in Riley v. California (2014) ---U.S. ----, 134 S.Ct. 2473, 189 L.Ed.2d 430 (Riley ). At the hearing on the motion to suppress, however, Minor's trial counsel did not mention the warrant requirement, arguing instead that the search was not justified at its inception and was unreasonable in scope. Trial counsel also argued that T.L.O."sets out the two-pronged determination of reasonableness[.]" Thus, while Minor's contentions on appeal focus on Riley, his counsel did not bring that case up at the hearing on Minor's motion to suppress. The People therefore contend Minor has forfeited this argument. Even if the argument has been properly preserved for appeal, it is unavailing.
Minor's argument suffers from a number of flaws. First, in contending that a warrant was required before school officials could search the contents of his cell phone, Minor relies heavily on Riley. There, however, the United States Supreme Court explicitly based its holding on the applicability of the warrant requirement. (Riley, supra, 134 S.Ct. at p. 2493.) In contrast, T.L.O."recognized an exception to the warrant and probable cause requirement for searches conducted by public school officials." (In re Joseph G. (1995) 32 Cal.App.4th 1735, 1739, 38 Cal.Rptr.2d 902, italics added.) As the United States Supreme Court explained, "[t]he warrant requirement, in particular, is unsuited to the school environment: requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools. Just as we have in other cases dispensed with the warrant requirement when 'the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search,' [citation], we hold today that school officials need not obtain a warrant before searching a student who is under their authority." (T.L.O., supra, 469 U.S. at p. 340, 105 S.Ct. 733 ; see also Vernonia School Dist. 47J v. Acton (1995) 515 U.S. 646, 656, 115 S.Ct. 2386, 132 L.Ed.2d 564 ["Fourth Amendment rights ... are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children."].) By overlooking this key distinction between T.L.O. and Riley, Minor fails to satisfy his burden of demonstrating error. (Cf. People v. Williams (1999) 20 Cal.4th 119, 129, 83 Cal.Rptr.2d 275, 973 P.2d 52 [in making motion to suppress, defendants must do more than assert that search was without a warrant; defendants must also show why no exception to warrant requirement applies].)
Second, as the People point out, Riley concerned "the reasonableness of a warrantless search incident to a lawful arrest." (Riley, supra, 134 S.Ct. at p. 2482.) The individuals subjected to the searches in Riley *1299 were both adults, and neither arrest occurred in the school context. (See id . at pp. 2480, 2481-2482 [one petitioner searched in conjunction with arrest for firearms possession after traffic stop and the other searched after arrest for distribution of crack cocaine].) Although Minor admits "the matter of a school search was not before the Riley Court," he offers us no case applying Riley to the search of a high school student's cell phone. Riley did not address the particular factual situation before us, and cases are not authority for propositions not considered therein. (E.g., People v. Knoller (2007) 41 Cal.4th 139, 154-155, 59 Cal.Rptr.3d 157, 158 P.3d 731.)
Third, quite apart from the absence of authority on the point, Riley itself acknowledged certain "fact-specific threats *314 may justify a warrantless search of cell phone data." (Riley, supra, 134 S.Ct. at p. 2494.) The Riley court alluded to hypothetical situations such as "a suspect texting an accomplice who, it is feared, is preparing to detonate a bomb[.]" (Ibid . ) Here, school officials were confronted by a situation in which a loaded firearm had been discovered on school property. They were concerned Minor could be using his cell phone to communicate with students who might possess another firearm or weapon the officials did not know about. In these circumstances, " '[t]he special need for an immediate response to behavior that threatens ... the safety of schoolchildren and teachers ... justifies the Court in excepting school searches from the warrant and probable-cause requirement, and in applying a standard determined by balancing the relevant interests.' "[4] (In re J.D., supra, 225 Cal.App.4th at p. 715, 170 Cal.Rptr.3d 464, quoting T.L.O., supra, 469 U.S. at p. 353, 105 S.Ct. 733 (conc. opn. of Blackmun, J.).)
Finally, the search in this case occurred before the United States Supreme Court issued its opinion in Riley. The People argue that prior to Riley, T.L.O. furnished the standard for judging the reasonableness of any search conducted on a student on school grounds. Thus, they contend the school officials in this case conducted the challenged search "in objectively reasonable reliance on binding appellate precedent." (Davis v. U.S. (2011) 564 U.S. 229, 131 S.Ct. 2419, 2423-2424, 180 L.Ed.2d 285 (Davis ).) The search "therefore was not subject to the exclusionary rule." (People v. Youn (2014) 229 Cal.App.4th 571, 573, 176 Cal.Rptr.3d 652.) We agree with the People. Even *1300 if we assume the holding in Riley applies to this situation, we decline to hold the school officials were bound by a standard that did not yet exist.[5]
D. The Juvenile Court Applied the Proper Standard
Quoting a two-paragraph excerpt from the juvenile court's ruling on the suppression motion, Minor contends the court applied the wrong standard in denying his motion. But Minor's selective quotation omits the vast bulk of the trial judge's comments, which total almost three pages in the reporter's transcript. Thus, Minor bases his contention on an artificially truncated version of the court's explanation for its ruling. Looking at the full ruling, we discern no error.
Although the juvenile court did not quote verbatim the language from controlling case law, it is clear it had the proper test in mind in making its ruling. The *315 court explained it had "to determine whether or not the school administrators acted reasonably under all of the circumstances that they were presented with at the time." (See T.L.O., supra, 469 U.S. at p. 341, 105 S.Ct. 733 ["the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search"].) The court reviewed the circumstances confronting the school officials and commented on Minor's suspicious behavior. It then noted, "you do have to see whether or not [the search] was reasonable to deal with the specific and special needs or the issues presented at the time." (See id. at p. 342, 105 S.Ct. 733, fn.omitted ["a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction"].) It noted the school administrators feared there might be other guns on campus, a possibility that "presents a very extreme risk to the student population." The court found "it was justified to look at the phone itself to see if [Minor] was indeed communicating, as it appeared he was manipulating the object, and the other student involved who did bring the gun was attempting to use his cell phone to communicate." It therefore found the search "reasonable under the circumstances, and ... limited in scope and in intrusion." (See ibid . ) This approach was fully consistent with T.L.O. and the California cases applying it. *1301 IV.-VIII.***
DISPOSITION
The dispositional order is modified to reflect a maximum term of confinement of three years. The matter is remanded to permit the juvenile court to calculate Minor's custody credits. In all other respects, the judgment is affirmed.
We concur:
Simons, J.
Needham, J.

All further undesignated statutory references are to the Welfare and Institutions Code.

See footnote *, ante.

We need not ask whether or to what extent the school officials relied on these particular facts. Their search will be found reasonable under the Fourth Amendment " ' "as long as the circumstances, viewed objectively,justify [the] action." [Citation.]' " (People v. Letner and Tobin(2010) 50 Cal.4th 99, 145, 112 Cal.Rptr.3d 746, 235 P.3d 62.)

This also suffices to answer Minor's contention that the search was excessively intrusive. Minor asserts the search into the data on the phone was unjustified and that any search should have been limited to determining whether there had been weapons-related communications. Here, the photographs were intermingled with Minor's text messages. Given the danger posed by the possible presence of firearms on campus, the circumstances certainly justified the use of "swift and informal ... procedures" to ascertain the extent of the threat. (T.L.O., supra,469 U.S. at p. 340, 105 S.Ct. 733.)

Minor contends the People may not rely on Davis because they did not raise this argument in the trial court and thus have not preserved it for appeal. Minor misapprehends both the parties' respective burdens on appeal and the role of this court. As respondent, the People may urge any ground for affirmance supported by the record. (E.g., L.K. v. Golightly(2011) 199 Cal.App.4th 641, 644, 131 Cal.Rptr.3d 159.) And as an appellate court, our "review is confined to the correctness or incorrectness of the trial court's [suppression] ruling, not the reasons for its ruling." (People v. Superior Court(2012) 204 Cal.App.4th 1004, 1011, 139 Cal.Rptr.3d 298.)

See footnote *, ante.