Filed 5/19/22  P. v. Carlos CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO LOPEZ CARLOS,<br><br>        Defendant and Appellant. | A161689<br><br>(San Francisco City & County Super. Ct. Nos. SCN220793, 11019305) |

While he was on parole, Armando Lopez Carlos — who had seven prior strike convictions — burglarized a woman's house and seriously injured her. A jury convicted Carlos of two counts of first degree burglary and receiving stolen property.  The trial court denied Carlos's motion to dismiss the prior strike convictions (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497) and sentenced him under the "Three Strikes" law.

On appeal, Carlos contends the evidence does not support convictions for "two distinct burglaries."  He also argues the trial court abused its discretion in denying his *Romero* motion.  The parties agree the abstract of judgment must be corrected, and we modify it.  In all other respects, we affirm.

1

# BACKGROUND

In 2011, the prosecution charged Carlos with several crimes. As relevant here, the operative information alleged two counts of first degree burglary (Pen. Code, § 459; counts 2 & 3),[1] and felony receiving stolen property (§ 496, subd. (a); count 4), and that Carlos committed the offenses while on parole (§ 1203.085, subd. (a)). As to count 2, the information alleged Carlos committed the burglary while a person other than an accomplice was present (§ 667.5, subd. (c)(21)), and that Carlos personally inflicted great bodily injury on a nonaccomplice in the commission of the crime (§ 12022.7, subd. (a)). The information further alleged Carlos had seven prior strike convictions (§§ 667, subds. (d), (e), 1170.12, subds. (b), (c)) and seven serious felony convictions (§ 667, subd. (a)(1)). At the prosecution's request, the trial court reduced count 4 to a misdemeanor. At trial, the parties offered the following evidence:

On a July 2011 afternoon, Kelly K. returned home from work to find her living room in disarray. Something seemed amiss, so Kelly went upstairs to investigate. In her bedroom, Kelly found a stranger — later identified as Carlos — standing by her bed wearing latex gloves. Kelly's bedroom had been ransacked, and her belongings were strewn "all over the floor." When Kelly asked Carlos what he was doing in her bedroom, he charged at her and knocked her into a nightstand. Kelly's ribs were fractured. As he fled the bedroom, Carlos grabbed a paper grocery bag. Kelly caught hold of the bag. It ripped, and Kelly's credit cards, checkbook, and a television remote control spilled out.

---

[1] Undesignated statutory references are to the Penal Code. Our citations to the Penal Code sections are to the versions of the statutes in effect during the pendency of the prosecution below.

Carlos ran out of the house. Kelly followed him, yelling, "Call 911, I'm being robbed." As Carlos ran toward a truck parked nearby, Kelly's neighbors tackled him. Shortly thereafter, police officers arrived. They detained Carlos and searched the truck, where they found numerous items taken from different rooms in Kelly's house, including a television, video games, and a knife.

Carlos testified he used drugs with Kelly. He stored his drugs at her house because he was on parole subject to a search condition. In July 2011, Carlos drove a stolen truck to Kelly's house to retrieve his drugs. He entered the house through the kitchen window, put on a pair of gloves, and searched everywhere for the drugs. Frustrated at his inability to find what he was looking for, Carlos decided to take Kelly's belongings, including her television and video games. He took the items from the house and put them in his truck. Then Carlos returned to the house. He was in Kelly's bedroom when she returned home. Carlos admitted entering Kelly's house twice without permission.

In 2018, the jury convicted Carlos of counts 2, 3, and 4. It found true the enhancement allegations attached to count 2, as well as the prior conviction allegations. The trial court found true the on-parole enhancement allegation. At Carlos's sentencing hearing in 2020, the trial court denied the *Romero* motion but struck two prior serious felony convictions. Pursuant to the Three Strikes law, the court sentenced Carlos to 25 years to life on count 2, plus a consecutive 13-year term (10 years for two serious felony enhancements and 3 years for the great bodily injury enhancement). The court imposed and stayed sentence on counts 3 and 4.

## DISCUSSION

Carlos raises two claims on appeal. First, he argues count 3 must be reversed because the evidence did not support convictions for "two distinct burglaries." Second, Carlos challenges the denial of his *Romero* motion. Neither argument has merit.

Carlos's first assertion — that he did not commit two "separate and distinct" burglaries because his entries into Kelly's home were pursuant to a single course of conduct — is foreclosed by *People v. Washington* (1996) 50 Cal.App.4th 568 (*Washington*). There, a jury convicted the defendant of two counts of burglary based on two separate entries into a single residence. On appeal, the defendant argued the entries were part of a single intention and plan to burglarize the residence and, as a result, he could be convicted of only one burglary. (*Id.* at p. 574.) The *Washington* court disagreed. It observed that the prohibition "against residential burglary is designed not so much to deter trespass and the intended crime but to prevent risk of physical harm to others that arises upon the unauthorized entry itself." (*Id.* at p. 577.) *Washington* continued: "Under section 459, burglary consists of an unlawful entry with the intent to commit a felony. Thus, the crime is *complete*, i.e., one may be prosecuted and held liable for burglary, upon entry with the requisite intent. [Citation.] It follows, therefore, that every entry with the requisite intent supports a separate conviction." (*Id.* at pp. 578–579.)

The same is true here. Viewed in the light most favorable to the judgment, the evidence establishes Carlos entered Kelly's house twice, both times without authorization and with the intent to steal. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890; *In re Gary H.* (2016) 244 Cal.App.4th 1463, 1478.) Each separate entry into Kelly's home "created a separate and

4

distinct risk of violent confrontation," (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1256) a risk that materialized when Carlos tackled and injured Kelly when she returned home and found him in her bedroom. (*Washington, supra*, 50 Cal.App.4th at p. 577.) As in *Washington*, Carlos was properly convicted of two counts of burglary. (*Id.* at p. 579; *People v. Wilson* (2015) 234 Cal.App.4th 193, 200 & fn. 5 ["[t]wo separate unauthorized entries into a building for purposes of committing felonies may result in two burglary convictions"].)

Our conclusion is not contrary to *People v Garcia* (2016) 62 Cal.4th 1116. There, our high court held that entries into interior rooms within a single structure will not support multiple burglary convictions unless "the interior rooms have characteristics that objectively demonstrate an occupant's distinct possessory or security interest, which an unauthorized entry would invade." (*Id.* at pp. 1119–1120, 1127.) Here, Carlos was not convicted of multiple counts of burglary based on his movement within Kelly's house, but rather on his two distinct and separate unauthorized entries into the residence itself. Nor are we persuaded by Carlos's reliance on *People v. Haynes* (1998) 61 Cal.App.4th 1282, which defines the scope of aider and abettor liability for robbery when the direct perpetrator attacks the same victim twice in close succession. (*Id.* at p. 1286.) Neither aiding and abetting liability nor robbery are at issue here.

Applying our independent judgment, we conclude Carlos was properly convicted of two burglaries. (*Washington, supra*, 50 Cal.App.4th at p. 578; *People v. Garcia, supra*, 62 Cal.4th at p. 1122 [whether statute permits multiple convictions is a legal question].) "The potential harshness of this result—allowing multiple convictions in circumstances that might be viewed as a single crime—is mitigated by the application of section 654, which 'limits

5

the *punishment* for separate offenses committed during a single transaction.' " (*In re Arthur V.* (2008) 166 Cal.App.4th 61, 67.) That is what the trial court did in this case when it stayed count 3. (See *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1474.)

Next, Carlos challenges the denial of his *Romero* motion. To place the issue in context, we briefly describe the statutory scheme. The Three Strikes law is intended "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses." (§ 667, subd. (b).) The Three Strikes law establishes a sentencing norm, "circumscribes the trial court's power to depart from this norm," and requires the trial court to justify explicitly its decision to do so, creating a "strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

A trial court may dismiss prior felony conviction allegations in cases prosecuted under the Three Strikes law when dismissal is "in furtherance of justice." (§ 1385, subd. (a); *Romero, supra*, 13 Cal.4th at pp. 529–530.) But the standards for striking prior convictions under the Three Strikes law are "stringent" and the circumstances must be " 'extraordinary' " for a career criminal to fall outside the spirit of the Three Strikes law. (*Carmony, supra*, 33 Cal.4th at pp. 377–378; *People v. Vasquez* (2021) 72 Cal.App.5th 374, 387.) In deciding whether to dismiss a prior strike, the lower court considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or

6

violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The court must also consider the defendant's constitutional rights, including guarantees against "disproportionate punishment," and society's interest in the "fair prosecution of properly charged crimes." (*Williams*, at p. 160.)

We apply the deferential abuse of discretion standard when reviewing the trial court's refusal to dismiss a prior strike. (*Carmony*, *supra*, 33 Cal.4th at p. 374.) "To show an abuse of discretion, the defendant must show that the trial court's decision was 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.] Accordingly, 'a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not "aware of its discretion" to dismiss [citation], or where the court considered impermissible factors in declining to dismiss.' " (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 856.)

With these principles in mind, we turn to Carlos's *Romero* motion. Carlos had seven prior strike convictions spanning from 1992 to 2004. In 1992, Carlos was convicted of first degree burglary; in 1994 he was convicted of four counts of first degree burglary; and in 2004, he was convicted of first degree burglary and receiving stolen property. Defense counsel moved to strike all but one of the prior strike convictions pursuant to *Romero*, *supra*, 13 Cal.4th 497. According to the motion, Carlos had an unstable childhood. He began using alcohol and marijuana as a child and sustained his "first adult felony" conviction at age 19. At the time of sentencing, Carlos was 50 years old and had spent 14 of those years incarcerated. While in custody on the current charges, Carlos participated in substance abuse programs and engaged in other rehabilitative programming; a residential drug treatment program agreed to accept Carlos upon release from custody.

The prosecution initially opposed the motion. Later, however, the prosecution requested the trial court dismiss all but one prior strike conviction. It noted the victim did not want Carlos to serve a long prison sentence; the prosecution also argued a determinate 15-year sentence — with execution of sentence suspended — was sufficient to punish Carlos and protect public safety.

At the October 2020 sentencing hearing, Kelly characterized Carlos as "a career criminal" who expertly burglarized her home, broke her ribs, and caused her "undeserved stress." Still, Kelly did not wish for Carlos to serve a lengthy prison sentence — she believed a 15-year prison sentence, along with drug treatment, would be appropriate. Two jurors shared their sentiment that a sentence imposed under the Three Strikes law would be unjust. One juror described her upbringing in San Francisco and expressed concern that minority populations represent a substantially disproportionate percentage of those incarcerated. The trial court thanked that juror for relating her "background and . . . [her] experiences within the neighborhood." Carlos gave a statement accepting responsibility for his crimes, summarizing his growth while incarcerated, and expressing a desire to attend a residential drug treatment program.

The court then heard argument from counsel. Defense counsel asserted a sentence under the Three Strikes law was unjust in light of the remoteness of certain prior convictions, Carlos's age, and his participation in rehabilitative programs while incarcerated. Counsel also noted members of the community — the victim and two jurors — disfavored imposing a lengthy prison sentence. The prosecution offered a similar argument, highlighting its opposition to "using strikes and [enhancement] allegations" to lengthen prison sentences.

8

The trial court denied the *Romero* motion. In a comprehensive ruling, the court listed the evidence it reviewed, recited the factors it considered, and described legislation giving trial courts discretion to strike prior convictions in the interests of justice. The court then detailed the reasons for its ruling, among them that the current offenses were more serious and violent than Carlos's prior strike convictions, and that in the commission of the crimes, Carlos injured the victim. Carlos's 22-year criminal history, the court explained, evinced a pattern of criminal conduct interrupted only when Carlos was incarcerated; the court also noted Carlos committed the current offenses just nine months after being released from prison and while he was on parole. As to Carlos's background, character, and prospects, the court found Carlos had an extremely high likelihood of reoffending and poor prospects for employment, and the court noted Carlos displayed "traits of character that demonstrate . . . [a] lack of moral, ethical, and honest qualities."

The trial court acknowledged the circumstances in mitigation, found that Carlos's substance abuse played a role in his criminal conduct, and observed that Carlos had, while incarcerated on the current offenses, completed a substance abuse program and educational coursework. It concluded: "having considered the record of the case, together with all the relevant factors heretofore discussed and not singling out one over another but taking all of them as a whole in its assessment, the Court finds that in light of the nature and circumstances of the present crimes of which [Carlos] now stands convicted, coupled with the consideration of his extensive 22-year criminal history — which is almost exclusively comprised of . . . first degree residential burglaries — together with the particulars of his background,

9

character, and prospects . . . the Court finds that the imposition of a sentence under the [T]hree [S]trikes law would be just and warranted."

On appeal, Carlos argues the trial court abused its discretion in ruling on the *Romero* motion by failing to consider the "victim's sentencing wishes" and "community mores" toward sentencing.[2]  This contention is belied by the record.  The victim's wishes and the prosecutor's approach to sentencing were brought to the court's attention both in writing — via pleadings and declarations — and orally — via testimony and argument at the sentencing hearing.

Before issuing its ruling, the trial court considered the parties' written submissions and "listened attentively" to the evidence presented, and the arguments of counsel, at the sentencing hearing.  Indeed, the court thanked one juror for relating her "background and . . . [her] experiences within the neighborhood."  The court said it was "acutely aware of the seriousness, significance, and implications" of its ruling and assured the parties it did not consider the *Romero* motion "lightly nor as a matter of routine."  It also expressly acknowledged the discretion conferred by recent sentencing legislation.  And in ruling on the motion, the court referred to Kelly's victim impact statement.  On this record, we have no reason to believe the court failed to consider the views of the victim, or those of the community, in ruling

---

[2] In support of this argument, Carlos requests judicial notice of recent sentencing legislation and of the "About Us" page from the website for the San Francisco County District Attorney's Office.  We deny the request as these materials are unnecessary to our resolution of this appeal.  We express no opinion on whether the factors identified by Carlos, in and of themselves, would be sufficient to deem a defendant outside the spirit of the Three Strikes scheme.  We reject Carlos's suggestion that the visiting bench officer who presided over trial and sentencing was not equipped to appropriately exercise its broad discretion in ruling on the *Romero* motion.

on the *Romero* motion. (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 638–639 [rejecting claim that trial court failed to evaluate relevant "factors and evidence" in denying motion to strike].)

The trial court carefully considered Carlos's current offenses, his lengthy criminal record, and his background, character, and prospects. After conducting this thorough review, the court determined "imposition of a sentence under the [T]hree [S]trikes law would be just and warranted." Carlos's disagreement with the weighing of the relevant factors does not demonstrate an abuse of discretion. This is not an "extraordinary" case in which no reasonable person could conclude the defendant falls within the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378; *People v. Vasquez*, *supra*, 72 Cal.App.5th at p. 387 [finding "no extraordinary circumstances in this record—none—that would mitigate against the application of the Three Strikes law"].)

To the extent Carlos advances an argument regarding the alleged unfairness of the Three Strikes law, such an argument is better directed to the Legislature, not this court. The question before us is not whether we would have granted Carlos's motion, but whether the trial court reasonably concluded Carlos did not fall outside the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) The answer is yes. (See *People v. Mendoza*, *supra*, 74 Cal.App.5th at p. 857 [no abuse of discretion in denying *Romero* motion]; *People v. Braden* (2021) 63 Cal.App.5th 330, 342, review granted July 14, 2021, S268925 [same]; *People v. Brugman, supra*, 62 Cal.App.5th at pp. 638–639 [same].)

11

## DISPOSITION

The judgment of conviction is affirmed. The abstract of judgment must be modified to align with the trial court's oral pronouncement of judgment. The trial court is ordered to prepare an amended abstract of judgment indicating that the court: (1) imposed two five-year enhancements (§ 667, subd. (a)(1)) attached to count 2; (2) imposed and stayed two five-year enhancements (§ 667, subd. (a)(1)) attached to count 3; and (3) imposed a $200 restitution fine (§ 1202.4) and imposed and stayed a $200 parole revocation fine (§1202.45). The court is directed to send a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____

Rodríguez, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Petrou, J.


A161689

13